Rockingham
No. 88-028

DALE A. DAIGLE

v.

CITY OF PORTSMOUTH

December 29, 1988

*Bernard J. Robertson*, of Exeter, by brief and orally, for the plaintiff.

*Burns, Bryant, Hinchey, Cox & Shea P.A.*, of Dover, and *Stern and Gaige P.A.*, of Dover (*Paul R. Cox* and *Stephen E. Gaige* on the brief, and *Mr. Cox* orally), for the defendant.

JOHNSON, J. The plaintiff, Dale A. Daigle, appeals from a decision of the Superior Court (*Nadeau*, J.) denying his motion for sanctions against the defendant and defendant's counsel for the withholding of certain materials and for the making of incomplete

statements during the discovery phase of *Daigle v. City of Portsmouth*, Rockingham Superior Court No. C-814-83. In a consolidated sanction motion, Daigle seeks an assessment of penalties, including reimbursement of legal expenses. For the reasons stated below, we vacate the order denying the motion, and remand the case for a determination as to the appropriate sanctions.

This appeal follows the verdicts in two trials, both involving Daigle and arising from the same events. In *Daigle v. City of Portsmouth*, a jury held the City of Portsmouth liable to the plaintiff on a theory of *respondeat superior* for the assault on Daigle committed by Portsmouth police officer Al Pace. In *Daigle v. Pace*, Rockingham Superior Court No. C-969-84, wherein Daigle sought to hold Pace personally liable for the assault, a different jury found that Pace had not assaulted Daigle. The facts of these cases and their inconsistent verdicts are discussed in detail in *Daigle v. City of Portsmouth*, 129 N.H. 561, 534 A.2d 689 (1987).

The motion for sanctions involves a failure by the City of Portsmouth to produce four statements implicating Pace in the assault on Daigle, and a failure to reveal the existence of these statements in answers to interrogatories and in various representations to the court. These statements are the "Hersey" note and "Lightizer," "Moore" and "Sargent" statements. The relevant facts are as follows.

On June 29, 1983, Daigle served a writ on the City of Portsmouth (the City) and Town of Newington for the injuries he suffered as the result of a brutal assault on August 12, 1981. Pace was not named as a defendant. Attached to the writ were interrogatories which included a request to "copy and attach any and all written materials, including but not limited to police officers [sic] notes, police reports, field incident reports, memorandum, investigation reports, internal investigation reports and any and all other written material about or related in any way to the allegations contained in the Writ." The City answered the interrogatories on August 5, 1983, without objection, but did not attach the "Hersey" note, which it had in its possession at least as of July 10, 1983. This note memorialized an oral report given by Patrolman Robert Hersey to Detective George Krook as part of the Portsmouth Police Department's internal investigation into the assault. The note read:

"Had been drinking. 7-8-83
 2:05 PM

Bob Hersey.
Came into office to talk about Daigle case.

> Hersey said that he remembers Al Pace saying that he did a woopie on Daigle and something about Jim Truman [sic] (Newington PD) saying something about seeing Daigle running from the burglary and he knew who he was and there was no sense chasing him or words to that effect. Hersey said that he didn't know if Pace was telling the truth or just bragging. Hersey said that Pace was capeable [sic] of doing it to Daigle. He said that Pace has been brutol [sic] to other people in the past.
>
> Hersey said that he thought that Pace even made the remark about teaching Daigle a lesson.
>
> Hersey said he couldn't remember the exact words that Pace said."

On September 27, 1983, Daigle filed a motion for production which included a request for "all records of any and all interviews conducted in relation to this matter[,] . . . all internal investigations including notes, interoffice memoranda, correspondence, statements, and reports . . . [and] any and all written documents or tape recordings of interviews or meetings held with respect to this matter." No objections were filed by the City, and the Trial Court (*Bean*, J.) granted the motion on October 12, 1983. The "Hersey" note was not turned over to Daigle.

On March 27, 1984, Stanton Remick, Marshal of the Portsmouth Police Department, in answer to interrogatories propounded by the plaintiff, stated that the defendant "has no factual evidence to show how the plaintiff received his injuries. . . ." On May 8, 1984, then Sergeant Norman Moore, acting shift commander on the night of the assault, was asked in deposition whether "anything occur[red] on that shift that was unusual." He failed to reveal the following information which he later summarized in a statement, the "Moore" statement, which he sent to the Portsmouth Police Department between September 27 and October 5, 1984:

> "On one occasion, I do not remember the date or situation, I was working the desk as the shift commander. [At the time of the incident he was a patrol supervisor but would work as shift commander when the captain was sick.] A call came in reference an officer requesting assistance. There were a couple of on-duty officers in the booking office as well as one off-duty officer, Al Pace. I told the duty officers to respond to the call. Al Pace was still in full uniform and yelled at me that he was going to give them a hand and ran out the door before I could stop him.

The time of the call was somewhere between Midnight and 0300 Hrs. and the desk officer was Off. Semprini. I distinctly remember this happening as I was quite upset that he was not told to go . . . I cannot state that this was the same date as the Daigle incident. . . . The only corrolation [sic] I can make as the time frame is consistent, it was one of the nights I happened to be in the station, and I dispatched men from the booking room area to the incidents."

The statement also included:

"[At the time of the Daigle incident,] Al Pace had not yet been promoted and . . . he tried constantly to remain in the limelight to draw recognition to himself. It was common knowledge that he used excessive force in many of his arrests and somehow lived a charmed life as he always skated. Overall he had a very bad image among the men."

The information contained in the summary had "already been given" to the Portsmouth Police Department prior to its writing, although it is not clear from the record by what date the police department had such knowledge. In any event, the interrogatories previously answered were not supplemented in any manner, even after the department had received the "Moore" statement.

Also on May 8, 1984, the deposition of Director Mortimer of the Portsmouth Police Department, who was in charge of the internal investigation, was taken. He testified that "we do not have any fact or anything to report to you that any police officer hit Dale Daigle with a club," and that "[n]othing has led us to believe that it has happened so far." At this deposition, the internal investigation file was handed over to Daigle's counsel at his request. Prior to handing over the file, and in the presence of Daigle's counsel, Mortimer removed the "Hersey" note. Counsel for Daigle interrupted the deposition to seek a court order compelling production of the note which had been removed. In its objection to such a production order, the City stated:

"the document . . . is a confidential communication . . . [and] contains information which is readily discoverable by the plaintiff's counsel through proper discovery procedures or information which the plaintiff's attorney already has . . . . [A]lthough numerous depositions have been taken and interrogatories answered, there has been nothing to

substantiate the allegations raised by the plaintiff in his lawsuit. The plaintiff bears the burden of proving his case."

On May 9, 1984, the Court (*Temple,* J.) ordered production of the note, and a copy was sent to Daigle, more than ten months after his initial interrogatory requesting "internal investigation reports and any and all other written material" related to the assault and nearly seven months after the court's October 12, 1983 order of production.

On August 14, 1984, Daigle filed a motion for specification of defenses. By order dated September 6, 1984, the Trial Court (*Gray,* J.) denied the motion "based on Defendant's response to interrogatories." The court instructed the City, however, to "advise Plaintiff's counsel if they come into possession of knowledge beyond that expressed in any interrogatory or answer."

On September 27, 1984, the Portsmouth Police Department sent a questionnaire to all of its personnel. The "Sargent" statement, answering the questionnaire, was returned sometime between September 27, 1984, and October 5, 1984. In it, Officer Sargent stated:

"[A]pproximately one week or less after the Taccetta call [which brought the officers to the place where Daigle was assaulted,] Bob Hersey called me by radio to meet him at the Bridge St. parking lot. Bob stated to me that Al Pace had told him that he had gone to the Taccetta call, found Daigle out back and had done a job on him and left him there. My responce [sic] to what Hersey told me was that Al Pace was a lier [sic] and a bragget [sic] . . . . I can remember many times when Al Pace bragged about incidents but usally [sic] he was there but he would butter it up to make himself look better or cover his wrong doings. . . . One [rumor] that I do remember was that Al Pace was hanging around the station after duty (it was not uncommon for him to do this) when the call came in, he grabbed a set of keys and went to the call."

There is some dispute whether the "Lightizer" statement was given to the police department during this same period or on July 2, 1984. It is undisputed that the Portsmouth Police Department had the statement as of October 5, 1984. In response to the same questionnaire, Robert Lightizer stated: "I personally heard him [Pace] say that he did it but I don't know how long after the alleged incident this occurred." Despite the outstanding court orders dated October 12, 1983, and September 6, 1984, the "Sargent," "Lightizer"

and "Moore" statements were not made available to Daigle until after the verdict had been rendered in the first trial in December 1984, while the parties were preparing for the second trial.

The court orders were modified in November, 1984. On Friday, November 16, 1984, Daigle made an oral motion for production of the Portsmouth Police Department's entire internal investigation file regarding the assault. At a hearing held on that day, counsel for defendant indicated that they had not reviewed the contents of this file, and the Court (*Gray*, J.) agreed to allow them to review the file over the weekend. On November 19, 1984, the first day of the trial in *Daigle v. City of Portsmouth*, the court ruled that the plaintiff was not entitled to the production of the file, which included the "Sargent," "Lightizer" and "Moore" statements. On November 29, 1984, the court, in response to another motion for production, orally ordered the production of those items in existence as of October 1983. This order, however, did not cover the "Sargent," "Lightizer" or "Moore" statements, as all three had been written after that date.

The "Sargent" and "Lightizer" statements were eventually released to Daigle by court order on March 14, 1985, during the discovery phase of the second trial. The order followed an *in camera* hearing on all material in the Portsmouth Police Department's internal investigation file. The "Moore" statement was not released at this time because, according to the court, it contained sensitive and unrelated police material. It was later released, with the sensitive material deleted, on June 12, 1985, in response to another oral motion by Daigle for production of the internal investigation file in its entirety.

From June through September 1985, Daigle filed four motions pertaining to discovery misconduct by the City. On September 30, 1985, the trial court declined to impose sanctions, based largely on the timing of the motions. The court noted that there was currently an appeal in *Daigle v. Portsmouth* before this court and that the case of *Daigle v. Pace* had not yet been tried. In October 1987, Daigle filed a consolidated sanction motion which incorporated his four earlier motions for sanctions. He also filed a motion for summary judgment. Following a hearing on December 18, 1987, the court, by order dated December 22, 1987, denied the motion for sanctions. After a hearing, the court denied reconsideration of the motion. This appeal followed.

■ The imposition of discovery sanctions is a matter left largely to the discretion of the trial court. *See Cape Cave Corp. v. Charlotte Asphalt, Inc.*, 384 So. 2d 1300, 1301 (Fla. Dist. Ct. App. 1980);

*Estate of Fado*, 43 Ill. App. 3d 759, 762, 357 N.E.2d 195, 198 (1976). Such a ruling will be sustained unless there has been an abuse of discretion. *See Affanato v. Merrill Bros.*, 547 F.2d 138, 140 (1st Cir. 1977); *Estate of Fado*, *supra* at 198, 43 Ill. App. 3d at 762. In the instant case, we find that the trial court erred both in failing to consider the actions of the City and its employees in the Portsmouth Police Department, and in considering the inconsistent verdicts reached in the two trials.

In its order denying Daigle's motion for sanctions, the trial court held that "[w]ithout question, certain statements of Portsmouth police officers were withheld by their superiors" during the discovery phase of *Daigle v. Portsmouth*. This holding is consistent with the finding of the jury in that case that "there was a cover-up at a higher level in the police department." The court concluded, however, that only "[i]f the court felt the testimony of Captain Mortimer," regarding how much *counsel* knew about the information which was withheld, "was certain enough for a finding that counsel were aware of his conduct, [would] sanctions . . . be considered . . . . Mortimer's testimony, however, is not sufficient for such a finding." In other words, the court considered only the actions of the defendant's counsel in determining whether to impose sanctions. It failed to consider the actions of the party itself.

Action or inaction by a party may provide the basis for the imposition of sanctions. *See In re Estate of Ward*, 129 N.H. 4, 7, 11–12, 523 A.2d 28, 31, 34 (1986) (allowing imposition of attorney's fees based on defendant's intransigence in providing information pursuant to discovery). While the action of counsel may trigger discovery sanctions, *see American Bd. of Trade, Inc. v. Dun & Bradstreet, Inc.*, 122 N.H. 344, 346, 444 A.2d 550, 551 (1982); *Affanato v. Merrill Bros.*, *supra* at 141, a party cannot act with impunity. Sanctions are appropriate in part to deter parties from disregarding discovery requests, *see Affanato v. Merrill Bros.*, *supra* at 140 (citing *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976)), and to compensate others for costs associated with a party's failure to act in accordance with such requests. These purposes would not be served if we were to hold that sanctions could be imposed only for attorney wrongdoing, and that a party was therefore free to disregard instructions from counsel regarding proper compliance with discovery requests. The withholding of "certain statements" by the Portsmouth Police Department is attributable to the City, under a theory of either direct or vicarious liability. *See generally Cutter v. Town of Farmington*, 126 N.H. 836, 840–41, 498 A.2d 316, 319–21 (1985).

Contrary to the trial court's decision, therefore, sanctions may be imposed against the City for disregarding discovery requests and orders, whether under counsel's encouragement or independently undertaken by its employees at the Portsmouth Police Department.

██ In its order denying the motion for sanctions, the trial court stated:

> "For this court to impose counsel fees and sanctions now, following the verdict of the second trial of *Daigle v. Pace*, would require the paradoxical finding that Pace had committed an assault in accordance with custom, policy or practice sanctioned by Portsmouth, an assault which the second jury found he did not commit."

This statement reveals two errors made by the court. First, the court incorrectly concluded that to impose counsel fees and sanctions requires a "finding that Pace had committed an assault in accordance with custom, policy or practice sanctioned by Portsmouth." While a finding by the jury in *Daigle v. City of Portsmouth* that Pace had acted in accordance with custom, policy or practice would have entitled Daigle to recover attorney's fees under 42 U.S.C. §§ 1983 and 1988, allowing attorney's fees does not depend upon such a finding. The imposition of attorney's fees may be used as a sanction for a failure to comply with discovery requests. *See Hubbard v. Panneton*, 121 N.H. 526, 528, 433 A.2d 1246, 1247 (1981). Ordering the payment of attorney's fees as a sanction for discovery misconduct is independent of a claim for attorney's fees under §§ 1983 and 1988.

██ The statement also demonstrates that the court was improperly influenced in its decision to deny sanctions by the inconsistent verdicts obtained in the two trials. We have emphasized before that the verdict reached in the second trial does not render the verdict obtained in the first trial incorrect. *Daigle v. City of Portsmouth*, 129 N.H. at 576, 534 A.2d at 696–97. Neither does the second verdict rectify any misconduct performed during the discovery phase of the first trial. It is not dispositive in determining whether to impose sanctions whether a claim ultimately prevails. We refuse to "fashion a rule whereby legal fees are awarded against intransigent defendants only to the extent of expenses incurred on prevailing claims." *In re Estate of Ward*, 129 N.H. at 11, 523 A.2d at 34.

■ The trial court's failure to consider the actions taken by the City and its employees, and its consideration of the verdict in the second trial, constitute error. The City argues, however, that its actions cannot trigger sanctions, since the information it withheld was privileged and, therefore, exempt from discovery. Although New Hampshire allows for a limited right to withhold certain privileged material, R. WIEBUSCH, 4 NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 809, at 39 (Supp. 1987), such a privilege must be claimed at the time the information, subject to a discovery request or order, is withheld. A party cannot determine by itself that material is exempt because of a privilege and fail to inform the other party that it is withholding specific information. In the instant case, the superior court ordered the City on October 12, 1983, to produce all notes, statements and reports concerning the City's internal investigation into the assault. Faced with this order, for example, the defendant could not unilaterally decide to withhold certain material from the plaintiff.

■ The defendant did eventually claim a privilege. The defendant's claim of a privilege, with regard to the "Hersey" note, made on May 8, 1984, in opposition to the disclosure of that note, however, does not rectify the withholding of the note from October 12, 1983, up until May 8, 1984, without making such a claim. The defendant's claim of privilege on November 19, 1984, with regard to the "Sargent," "Lightizer" and "Moore" statements, does not rectify its withholding of material, subject to a discovery order, which it had in its possession prior to that date. The defendant makes two responses. First, the defendant argues that although it never objected to Daigle's September 27, 1983 motion for production of all material pertaining to the assault, including the internal investigation, it had an "understanding" with the plaintiff that the internal file would not be turned over. Whether or not there was a clear waiver by Daigle of his right to the material included in the discovery order is a question of fact which must be determined below. See generally 28 AM. JUR. § 174.

■ The defendant argues as well that its failure to turn over the "Sargent," "Lightizer" and "Moore" statements did not constitute noncompliance with the court orders of October 12 and September 6, 1983, since it did not have possession of those statements at the time those orders were issued. We find no merit in this contention, as a party is under a continuing duty to comply with an order of production by the court, and must produce material subject to a discovery order, if and when it becomes

available. *See generally* SUPER. CT. RS. 35e and 36. If that were not the rule, a party would have to request the same information repeatedly in order to ensure that it received the information it desired and to which it was entitled, but which the other party might have received after an earlier order of production. In the instant case, the City had the duty to produce, or else claim a privilege for, material pertaining to its internal investigation as that material came into its possession during the period prior to November 19, 1984, when the previous orders requiring production were effectively rescinded. The defendant was also under a duty, independent of the court orders, to supplement responses to interrogatories which were incorrect when made or had become incorrect. SUPER. CT. R. 35e.

The trial court concluded its order denying sanctions by stating "that the factual allegations of the plaintiff, even if supported, would not justify the imposition of sanctions under the circumstances of this case." We can only emphasize that the facts as they now appear on the record represent precisely the situation where sanctions would be most appropriate. The facts as they are now developed display a flagrant disregard of discovery requests and orders by the City, a party which possesses far greater resources than the plaintiff, and which has been entrusted by the people of that city with the responsibility to exercise its power and use its resources in accordance with the law.

Plaintiff's request for summary judgment is denied. RSA 491:8-a requires such motion to be accompanied by "an affidavit based upon personal knowledge of admissible facts as to which it appears affirmatively that the affiants will be competent to testify." Because the plaintiff failed to attach an affidavit, we address the issue no further.

 Accordingly, we vacate the denial of plaintiff's motion for sanctions and remand the case to the trial court for a determination as to the appropriate sanctions. In making this determination the court may consider attorney's fees and court costs. *See Hubbard,* 121 N.H. at 528, 433 A.2d at 1247. We make no ruling with regard to who may bear the ultimate burden of any sanctions imposed on the City.

*Vacated and remanded.*

THAYER, J., did not sit; the others concurred.