Rockingham
No. 91-515

DALE A. DAIGLE

v.

CITY OF PORTSMOUTH

August 31, 1993

*Gallagher, Callahan & Gartrell P.A.*, of Concord (*Michael R. Callahan* and *David A. Garfunkel* on the brief, and *Mr. Callahan* orally), and *Dale A. Daigle, pro se*, joined the brief, for the plaintiff.

*Devine, Millimet & Branch, P.A.*, of Manchester (*George R. Moore* and *James M. Costello* on the brief, and *Mr. Moore* orally), *McLane, Graf, Raulerson & Middleton*, of Concord (*Jack B. Middleton* and *Michael J. Quinn* on the brief, and *Mr. Middleton* orally), and *Broderick & Dean*, of Manchester (*John T. Broderick* on the brief), for the defendant.

BATCHELDER, J.   The plaintiff appeals from the Superior Court's (*Gray*, J.) approval of the Master's (*Bean*, J.) recommendation to award attorney's fees to the defendant. We affirm in part, reverse in part, and remand for further proceedings.

Twelve years have passed since the events giving rise to the underlying litigation. This appeal adds yet another and hopefully the final chapter to the proceedings.

The first jury trial in litigation between Daigle and the City of Portsmouth concluded in December 1984 with a $500,000 award in favor of the plaintiff Daigle. The second jury trial, between Daigle and Portsmouth Police Officer Al Pace, concluded in December 1985 with a verdict for defendant Pace. This court affirmed the verdicts in both cases. *See Daigle v. City of Portsmouth*, 129 N.H. 561, 534 A.2d 689 (1987) (*Daigle I*).

In 1987, plaintiff's attorneys, Bernard Robertson and Stephen Jeffco, moved for sanctions against the city and its attorneys, Paul

Cox, Stephen Gaige, and Robert Sullivan. The motion alleged "willful and systematic withholding of discoverable material" during the litigation and was denied. The plaintiff appealed to this court, and based on the record presented, we remanded for an evidentiary hearing to determine the merits of the allegations. *Daigle v. City of Portsmouth*, 131 N.H. 319, 553 A.2d 291 (1988) (*Daigle II*).

In the meantime, Attorney Robertson filed a professional misconduct complaint against the three defense attorneys based on the alleged discovery abuses. The complaint was filed with the professional conduct committee of this court. The defense attorneys' answer to the complaint was treated by the committee as a crosscomplaint against Robertson. The charges against the defense attorneys were dismissed, and Robertson was found guilty of violating Rules of Professional Conduct 4.4 and 8.4. This court affirmed those findings in *Robertson's Case*, 137 N.H. 113, 626 A.2d 397 (1993).

Pursuant to this court's remand in *Daigle II*, Judge Bean, acting as master, held a six-day evidentiary hearing in May 1989. The plaintiff's motion for sanctions was denied, and the master's decision was approved by the Superior Court (*McHugh*, J.) and affirmed by this court, *Daigle v. City of Portsmouth*, 133 N.H. 498, 577 A.2d 1236 (1990) (*Daigle III*). Subsequently, the defendant city filed a motion for attorney's fees incurred in defending the allegations of discovery misconduct, which was granted by Judge Bean after a hearing. The Superior Court (*Coffey*, J.) approved $133,187.60 in attorney's fees, and this appeal followed.

■■ The material question before us is whether the award of attorney's fees was an abuse of the trial court's discretion. Exceptions to the rule that each party to a lawsuit bears responsibility for his or her own attorney's bill include instances "where litigation is instituted or unnecessarily prolonged through a party's oppressive, vexatious, arbitrary, capricious or bad faith conduct," *St. Germain v. Adams*, 117 N.H. 659, 662, 377 A.2d 620, 623 (1977), and cases in which parties "are forced to litigate against an opponent whose position is patently unreasonable." *Keenan v. Fearon*, 130 N.H. 494, 502, 543 A.2d 1379, 1383 (1988). "In evaluating the trial court's ruling on this issue, we must first keep in mind the tremendous deference given to a lower court's decision on attorney's fees." *Adams v. Bradshaw*, 135 N.H. 7, 16, 599 A.2d 481, 487–88 (1991), *cert. denied*, 112 S. Ct. 1560 (1992). In applying the abuse of discretion standard, we "look[ ] for some support in the record for [the] trial court's decision." *Maguire v. Merrimack Mut. Ins. Co.*, 133 N.H. 51, 54, 573 A.2d 451, 453 (1990).

■ We dispose at the outset of the plaintiff's argument that this court's decision in *Robertson's Case*, 137 N.H. at 116–17, 626 A.2d at 399, requires the application of collateral estoppel and thus the reversal of the award of attorney's fees. Collateral estoppel has no bearing when, as here, the burden of proof in the prior proceeding is higher than the burden in the subsequent proceeding. *In re Three Video Poker Machines*, 129 N.H. 416, 420, 529 A.2d 905, 908 (1987). *Compare Otis' Case*, 135 N.H. 612, 613, 609 A.2d 1199, 1200 (1992) (violation of Rules of Professional Conduct must be established by clear and convincing evidence) *with Maguire v. Merrimack Mut. Ins. Co.*, 133 N.H. at 54, 573 A.2d at 453 (award of attorney's fees committed to the sound discretion of the trial court).

■ Evidence introduced by the plaintiff at the sanctions hearing in support of the allegations of discovery misconduct included all of the evidence summarized by this court in *Daigle II. See Daigle v. City of Portsmouth*, 131 N.H. at 321–25, 553 A.2d at 292–95. Based on that evidence, we cannot hold that the plaintiff's pursuit of sanctions for the perceived discovery abuses was patently unreasonable. *See Guaraldi v. Trans-Lease Group*, 136 N.H. 457, 462, 617 A.2d 648, 651 (1992). The fact that those claims later were unsuccessful does not alone warrant an award of fees. *See id.* Their lack of merit was not established until defense counsel testified at the sanctions hearing as to the timing of their knowledge of the particular documents. To the extent, therefore, that the award in this case includes all fees incurred in preparation for and participation in the hearing, such an award is not supported by the evidence and is reversed. *See Wright v. Jackson*, 522 F.2d 955, 958 (4th Cir. 1975).

The record indicates, however, that the sanctions hearing encompassed more than the initial allegations that four documents, and information relating to those documents, were knowingly withheld. At the outset of the sanctions hearing a motion was filed by the plaintiff's attorneys to increase sanctions to 3.3 million dollars, claiming that the City of Portsmouth and its attorneys had engaged in "many unlawful deeds . . . over a long period of time" and alleging the need to appoint "a Special Prosecutor" and empanel "a Special Grand Jury" to examine the evidence. In addition, the plaintiff's attorneys made charges of perjury, criminal activity, and conspiracy to withhold information on the part of the defense attorneys, which they vowed to prove "beyond any doubt." The master found, however, that there was no evidence introduced in support of such serious allegations of wrongdoing, and our review of the record supports that finding. In fact, testimony established that Robertson had offered to

settle his case for twice the jury verdict and that the offer was made under threat of criminal charges, bad publicity, and disbarment proceedings against opposing counsel.

■ In *Keenan v. Fearon*, 130 N.H. at 501, 543 A.2d at 1383, we recognized that "the 'unnecessary' character of the judicial proceeding [may] . . . justify [a] fee award." The trial court has authority to award fees as "compensation for those who are forced to litigate against an opponent whose position is patently unreasonable." *Id.* at 502, 543 A.2d at 1383. The focus in such cases is on "a litigant's unjustifiable belligerence or obstinacy" where an action is "commenced, prolonged, required or defended without any reasonable basis in the facts provable by evidence." *Id.*; *see Town of Nottingham v. Bonser*, 131 N.H. 120, 133, 552 A.2d 58, 65 (1988) (persistent course of contumacious action warranted fee award), *cert. denied*, 490 U.S. 1109 (1989); *Harkeem v. Adams*, 117 N.H. 687, 691, 377 A.2d 617, 619 (1977).

One of the legacies of Anglo-Saxon jurisprudence and the common law is the adversarial process. Properly used, including cross-examination and discovery, it is an effective tool in the search for truth. The integrity of the process and its continuing viability depend, however, on the members of the bar, who are in a position of privilege to use it. Consequently, there is a concomitant duty not to abuse the process.

The practice of law is not simply an occupation; it is a profession. All members of the profession bear the responsibility of ensuring that our justice system works properly and efficiently. That responsibility encompasses not simply the appropriate application of technical skills, but also the obligation to respect the dignity of those involved in the legal process. When advocacy is used to undermine the professional reputations of opposing counsel, or simply for the sake of burdening the opponent with unnecessary expenditures of time and effort, the system has been poorly served. The tactical abuses visited upon the lawyers and litigants in this case present matters of grave concern to the trial bar and the legal profession. They rise from unenlightened attitudes concerning the adversarial process. The trustees of the Los Angeles County Bar Association in the preamble to the Association's litigation guidelines have captured in part the essence of the problems we here address:

> "For us, filing needless interrogatories or oppressive document demands are not acceptable tactical ploys just because they will divert the other side by requiring useless work.

> For us, the refusal to accommodate other counsel is not a sign of strength or determination but a simple act of unreasonableness likely to be revisited on the instigator, all to no productive end. For us, the idea that civility and candor stand in the way of desired results is in fact inconsistent with the achievement of long term goals, including successful results for our clients.
>
> Most lawyers impose high standards on themselves. They are courteous, candid, and accommodating to opponents, judges and witnesses—even when faced with less professional behavior by their adversaries. By meeting those high standards, lawyers do not sacrifice their clients' interests; they advance them. They do not compromise principles; they show a steady resolve to stand by them."

Paul Cox, an attorney for the City of Portsmouth, testified in response to a question as to the effect on him of the allegations made by the plaintiff's attorneys:

> "There's—other than the health of my family, there's not too many things you could do to try to destroy me, but to destroy my word and my reputation is one of them. And Mr. Robertson . . . has done everything conceivable, weird, scary things with other attorneys who have called me and asked what the heck is going on, that he's told them he's out to get me, that he's going to see that I'm put in jail, that I'm going to be disbarred, etcetera, and I would like to say I could take all that, let it run off my back, but it's been a tough four years."

Robert Sullivan, the City Attorney for the City of Portsmouth, testified in response to a similar question concerning the effect this matter has had on his life:

> "It's an unbelievable nightmare . . . . For example, just during the course of this hearing there have been articles in the newspaper, front page article in the Portsmouth Herald last week which—the thrust of the article was an inquiry concerning whether I would be disbarred as the City Attorney as a result of these allegations in this case. Page one of the paper in the city which I serve.
>
> I went to a city council meeting last night after court was over to deal with another matter and one of the councilmen, the people who are the governing body of the City of

Portsmouth, one of the councilmen asked me how my disbarment proceedings were going. These things are unbelievable.

There's been another story in the Portsmouth Herald in which Mr. Robertson was quoted . . . as saying that the taxpayers of the City of Portsmouth were going to have to pay 1.65 million dollars as a result of my misconduct in the Daigle litigation."

■ The allegations made by the plaintiff's attorneys rose to the level of an unsubstantiated direct and personal assault upon the integrity, ethics, and professional reputations of the defense attorneys, beyond the initial charges of discovery violations. This conduct resulted in the prolongation and enlargement of the proceedings to the detriment of the City of Portsmouth, and to that extent the award of fees was "an appropriate tool in the court's arsenal to do justice and vindicate rights." *Harkeem v. Adams*, 117 N.H. at 690, 377 A.2d at 619.

"When presented with evidence which is consistent with two possible . . . interpretations of how opposing counsel have conducted themselves, professional courtesy and dignity militate in favor of adopting that which is consistent with ethical and professional conduct, at least until the contrary is demonstrated beyond mere suspicion. When publishing allegations relating to misconduct by opposing counsel . . . even more circumspection is expected from an attorney as a matter of professionalism."

*Nault's Automobile Sales, Inc. v. American Honda Motor Company, Inc.*, 148 F.R.D. 25, 34 (1993) (sanctions imposed pursuant to Federal Rule of Civil Procedure 11 where allegations of perjury and criminal conduct on part of opposing counsel were unwarranted). No evidence was introduced in support of the additional allegations, and an award of fees is supported to the extent the hearing was thereby prolonged or defended. *See Keenan v. Fearon*, 130 N.H. at 502, 543 A.2d at 1383.

■ We vacate the award of fees and remand to the trial court for a new assessment consistent with this opinion. Each party is to bear its own costs incurred in this appeal.

*Affirmed in part; reversed in part; remanded.*

THAYER, J. did not sit; the others concurred.