Strafford
No. 2002-457

MARK GRENIER d/b/a ROYALTY AUTOMOTIVE SERVICES

v.

BARCLAY SQUARE COMMERCIAL CONDOMINIUM OWNERS'
ASSOCIATION & a.

Argued: June 11, 2003
Opinion Issued: October 10, 2003

*Robert E. Ducharme*, of Stratham, by brief and orally, for the plaintiff.

*Sanford Roberts, PA,* of Portsmouth (*Sanford Roberts* on the brief and orally), for the defendants.

BRODERICK, J. The defendants, Barclay Square Condominium Owners' Association and New Hampshire Real Estate Management and Brokerage, Incorporated, appeal an order of the Superior Court (*Houran,* J.) finding that they were not authorized to: (1) promulgate a rule to regulate the use of parking spaces; and (2) tow vehicles that are in violation of that rule. The defendants also argue that the court erred by failing to award them attorney's fees. The plaintiff, Mark Grenier d/b/a Royalty Automotive Services, cross-appeals, arguing that the trial court erred by failing to award him attorney's fees and costs, and by ordering him to pay storage costs associated with the towing of his vehicles. We affirm in part, reverse in part, vacate in part and remand.

The trial court found the following relevant facts. The plaintiff owns two units in the Barclay Square condominium complex (Barclay Square) located in Somersworth. Barclay Square is a twenty-four-unit business and commercial complex established in 1987 and is a registered condominium association. It is governed by a board of directors (board) and managed by defendant New Hampshire Real Estate Management and Brokerage, Inc. (New Hampshire Real Estate).

From his two units, the plaintiff operates Royalty Automotive Services, an automobile repair and sales business. In connection with his business, the plaintiff needs parking spaces for a number of vehicles, both during the day and overnight. The plaintiff regularly uses a portion of the common area to the rear of the units for parking.

At the annual meeting of the Barclay Square Condominium Association (association) in September 1998, the association adopted a temporary amendment requiring all business owners in Barclay Square wishing to use parking spaces in the rear of the units to request permission from the board. This amendment was effective until the next annual meeting in September 1999. At the September 1999 meeting, twenty-two unit owners voted sixteen to six to discontinue the temporary amendment. The association, however, voted twenty to two to direct the board to promulgate, within sixty days, "a new parking/general usage policy for the rear land" and to bring the proposal to a vote.

In 1999, the board developed a proposed ordinance (parking rule) regarding overnight parking in the rear common area. The owners of twenty-one of twenty-four units voted to approve the ordinance, which provides as follows:

> Effective November 1, 1999 all unit owners and lessees wanting to use the rear common land to park *registered and inspected* (excluding dealer plates) motor vehicles or trailers overnight must first request permission in writing from the BSCCA Board of Directors. Under no circumstances shall the Board grant an individual business owner permission to park more than four (4) vehicles overnight at one time. Permission granted will be on a "space available" basis and will be for a specified area of land in the rear. . . . Non-compliance with the terms and conditions of said parking permission will be grounds for immediate revocation of this permission.

By letter dated December 14, 1999, the plaintiff requested permission to park "the maximum amount of vehicles allowed overnight" in the rear common area. On March 26, 2001, G. Brandt Atkins, president of New Hampshire Real Estate, wrote to the plaintiff, informing him that he had been and continued to be in violation of the parking rule and asking that he conform by 5:00 p.m. on April 3, 2001. Atkins included a copy of the parking rule with the letter and stated that "non-compliance will be grounds for the Board of Directors to immediately revoke the permission you requested in your December 14, 1999 letter to the Board."

Atkins notified all unit owners and tenants on April 5, 2001, that he intended to tow any vehicle in violation of the overnight parking rule that same evening. Atkins had received approval from the board to tow offending vehicles prior to issuing notices to unit owners and tenants. On the evening of April 5, 2001, Atkins discovered seven vehicles belonging to the plaintiff's business parked in the rear common area. He had three vehicles that were unregistered and/or uninspected towed.

The plaintiff did not pay the $300 necessary to recover his vehicles from the towing company and the vehicles were subsequently moved into storage at Superior Towing Company, Inc. By court order incorporating the parties' stipulation, two parties originally named in this case, Superior Towing Company, Inc. and Automation Towing/Recovery, were dismissed, the plaintiff paid $4,350 to Superior Towing Company, and Superior Towing was ordered to hold the vehicles without additional charge pending the court's decision on the merits. The court stated that "[t]he ultimate responsibility for the towing and storage charges of $4,350 will be determined by the court in its final decision."

Following a non-jury trial, the trial court found that the board did not have the authority to amend its rules to limit overnight parking in the rear common area to four vehicles per business owner. Further, it found that the board was not authorized to tow vehicles in violation of the parking

rule because the rule itself limits the sanction available, at least as to the first violation, to revocation of parking permission. Moreover, the court found that the plaintiff did not receive sufficient notice of the association's intent to tow vehicles parked in violation of the parking rule.

The court stated, however, that the plaintiff was responsible for any storage costs in excess of $300 because he failed to reclaim his vehicles on April 6, 2001, and, therefore, did not mitigate his damages. The court also denied the plaintiff's request for attorney's fees and costs. The plaintiff filed a motion to reconsider, which was also denied. This appeal followed.

██ ██ In their brief, the defendants concede that they did not have the authority to limit the available parking per business owner as found by the trial court. They argue alternatively, however, that they had the authority to tow offending vehicles from the property because the parking rule also prohibits keeping uninspected and/or unregistered vehicles overnight in the rear common land. We need not decide this issue because even if we assume that the defendants could penalize the plaintiff for parking unregistered and/or uninspected vehicles in the rear common area, they were not authorized to tow his vehicles. The parking rule, in pertinent part, provides that "[n]on-compliance with the terms and conditions of said parking permission will be grounds for immediate revocation of this permission." In finding that the defendants did not have the authority to implement the towing rule, the trial court stated that the penalty provision could reasonably be interpreted as limiting the sanction to be imposed in the event of a parking violation. We agree. While a condominium association may be permitted to promulgate reasonable rules to address day-to-day concerns, the rule cannot contravene or otherwise conflict with the express language of the condominium documents. Here, the parking rule provides expressly that the unit owner will lose permission to use parking spaces if he or she fails to comply with the parking rule. Moreover, at the time of the events in question, the condominium by-laws provided that the board shall have the power to levy fines, which were not to exceed $10 for one violation, against a unit owner for violations of the provisions of the declaration, by-laws or condominium rules. We conclude, therefore, that the defendants' implementation of the towing penalty was not authorized in light of these other penalty provisions.

The defendants next argue that the trial court erred by failing to award it attorney's fees pursuant to RSA 356-B:15, II (Supp. 2002). "We will not overturn the trial court's decision concerning attorney's fees absent an [unsustainable exercise] of discretion." *Business Publications v. Stephen*, 140 N.H. 145, 147 (1995) (quotation omitted); *see also State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion

standard). In evaluating the trial court's ruling on this issue, we must first keep in mind the tremendous deference given to a trial court's decision on attorney's fees. *Daigle v. City of Portsmouth*, 137 N.H. 572, 574 (1993).

■ Our analysis begins with the statutory language itself; when that language is plain and unambiguous, we need not look beyond the statute for further indications of legislative intent. *Johnson v. City of Laconia*, 141 N.H. 379, 380 (1996). We ascribe to statutory words and phrases their usual and common meaning, unless the statute itself suggests otherwise. *Id.* Nevertheless, we do not assume that the legislature would enact statutory language that would lead to an absurd result. *Atwood v. Owens*, 142 N.H. 396, 398 (1997).

RSA 356-B:15 provides:

> I. The declarant, every unit owner, and all those entitled to occupy a unit shall comply with all lawful provisions of this chapter and all provisions of the condominium instruments. Any lack of such compliance shall be grounds for an action or suit to recover sums due, for damages or injunctive relief, or for any other remedy available at law or in equity, maintainable by the unit owners' association, or by its board of directors or any managing agent on behalf of such association, or, in any proper case, by one or more aggrieved unit owners on their own behalf or as a class action.
>
> II. The unit owners' association shall be entitled to all costs and attorneys' fees incurred in any proceeding under RSA 356-B:15, I.

The defendants argue that they are entitled to attorney's fees under the plain language of RSA 356-B:15, II. Contrary to the defendants' argument, it is not the question of who initiates the underlying action that controls the award of attorney's fees, but rather whether the party claiming those fees was successful. To construe RSA 356-B:15, II as allowing the defendants to recover attorney's fees in this case would discourage condominium unit owners such as the plaintiff from bringing claims to protect their rights since they would be responsible for the association's attorney's fees regardless of whether they win or lose. Such an absurd result could not have been intended by the legislature. Rather, we interpret RSA 356-B:15, II as providing for an award of attorney's fees to a condominium unit association for litigation in which it prevails.

The legislative history of RSA 356-B:15, II supports this interpretation. RSA 356-B:15, II was proposed along with RSA 356-B:46-a (Supp. 2002) in

Senate Bill 105, entitled, "An act relative to rent collection upon delinquency in payment of common expenses by condominium unit owners." The description of this bill provides that it:

I. Allows a condominium unit owners' association to collect rents from the tenant of a unit to offset common expenses assessed to the unit in the event that the unit owner fails to pay the common expenses assessed to the unit.

II. Holds harmless any tenant who pays rent or a portion of rent to the unit owners' association, rather than to the unit owner, in compliance with the provisions of the bill.

III. Provides for the association's recovery of attorneys' fees and costs incurred *in enforcing RSA 356-B:15, I.*

N.H.H.R. JOUR. 766 (1997) (emphasis added). As is evident from this history, the purpose of RSA 356-B:15, II is to allow the recovery of attorney's fees and costs associated with actions in which the association successfully enforces the lawful provisions of RSA chapter 356-B and all provisions of the condominium instruments. Thus, we hold that the defendants are not entitled to attorney's fees and costs in this case under RSA 356-B:15, II.

On cross-appeal, the plaintiff argues that the trial court erred by failing to grant him costs and attorney's fees. "A prevailing party may be awarded attorney's fees when that recovery is authorized by statute, an agreement between the parties, or an established judicial exception to the general rule that precludes recovery of such fees." *Town of Nottingham v. Newman*, 147 N.H. 131, 137 (2001) (quotation omitted). Although parties generally are responsible for their own attorney's fees,

we have recognized exceptions where an individual is forced to seek judicial assistance to secure a clearly defined and established right if bad faith can be established; where litigation is instituted or unnecessarily prolonged through a party's oppressive, vexatious, arbitrary, capricious or bad faith conduct; as compensation for those who are forced to litigate in order to enjoy what a court has already decreed; and for those who are forced to litigate against an opponent whose position is patently unreasonable.

*Business Publications*, 140 N.H. at 147 (quotations omitted). The plaintiff argues that he is deserving of attorney's fees because the association, in enacting the parking rule and towing sanction, acted in bad faith and

maintained a position that was patently unreasonable. As explained above, the trial court has authority to award fees as compensation for those who "are forced to litigate against an opponent whose position is patently unreasonable." *Daigle*, 137 N.H. at 574. The focus in such cases is on a litigant's unjustifiable belligerence or obstinacy where an action is commenced, prolonged, required or defended without any reasonable basis in the facts provable by evidence. *Id.*

■ After reviewing the record, we find that the trial court's discretion in denying the plaintiff attorney's fees is sustainable. We find no support in the record that the defendants either acted in bad faith by implementing the new parking rule and towing sanction or that its position in this case was patently unreasonable. While the defendants' actions may have been wrong, the record reflects that the actions were taken to remedy a legitimate parking concern. The issue was the subject at two annual meetings, with the owners of twenty-one of twenty-four units eventually voting to approve the final rule in 1999. Moreover, all unit owners, including the plaintiff, were notified on April 5, 2001, that vehicles in violation of the overnight parking rule would be towed that evening. Atkins also received approval from the board to tow offending vehicles prior to issuing notices to unit owners and tenants. While the trial court found that the plaintiff did not receive sufficient notice of the impending towing, this does not mean that the defendants' overall position is patently unreasonable. The fact that its position was unsuccessful does not alone warrant an award of fees. *Id.* at 575.

■ The plaintiff next argues that even if the defendants did not act in bad faith, he is entitled to attorney's fees based upon equitable principles. Essentially, he contends that it is fundamentally unfair to allow an association to recover attorney's fees under RSA 356-B:15, II if it prevails, but deny the same benefit to the unit owner who successfully litigates his or her claim. We find this argument unpersuasive. First, while RSA 356-B:15, II may not be evenhanded in its award of attorney's fees, it is for the legislature, not this court, to determine whether such legislation should be amended, since we will not add words to a statute that the legislature did not see fit to include. *See Appeal of Pritchard*, 137 N.H. 291, 293 (1993). Second, because we conclude that the defendants did not act with bad faith or maintain a position that was patently unreasonable, the plaintiff is not entitled to attorney's fees.

■ The plaintiff may, however, be entitled to costs. As a general rule, costs are "allowable only when authorized by statute or court rule." *Claremont School Dist. v. Governor (Costs and Attorney's Fees)*, 144 N.H.

590, 593 (1999) (quotation omitted). Superior Court Rule 87, entitled "Taxation of Costs in Civil Proceedings," provides that "[c]osts shall be allowed as of course to the prevailing party as provided by these rules, unless the Court otherwise directs." SUPER. CT. R. 87(a). Superior Court Rule 87(b) delineates the procedures for claiming costs and objecting to claimed costs. Superior Court Rule 87(c) details which costs shall be allowed to the prevailing party and which costs may be allowed within the discretion of the trial court. From the record before us, it is unclear if the parties or the trial court followed the procedures of Rule 87, or if the trial court made its finding regarding plaintiff's request for costs pursuant to Rule 87. Consequently, we vacate the trial court's denial of the plaintiff's request for costs. On remand, the plaintiff's request for costs shall be considered within the framework of Superior Court Rule 87. *See Gammans v. FHP Constructors*, 146 N.H. 702, 704-05 (2001).

Finally, the plaintiff asserts that the trial court erred by ordering him to pay $4,350 in storage costs associated with the wrongful towing of his vehicles. The trial court reasoned that the plaintiff was responsible for these storage costs because, by failing to recover his vehicles the day after they were towed, he failed to mitigate his damages. This reasoning is flawed.

■ It is well established that a party seeking damages occasioned by the fault of another must take all reasonable steps to lessen his or her resultant loss. *See Flanagan v. Prudhomme*, 138 N.H. 561, 575 (1994). The defendants bear the burden of proving that the plaintiff failed to mitigate damages. *Id.* at 575-76. For the mitigation doctrine to apply, however, the party against whom the doctrine is asserted must be seeking damages. In this case, the plaintiff did not claim storage costs as damages. In addition to seeking recovery of towing fees, the plaintiff's lawsuit asked for the costs associated with the litigation, his attorney's fees, and the release of his cars "without the payment of any costs or fees." In other words, he merely sought the return of his wrongfully towed and stored vehicles. At no time did the plaintiff request, or present any evidence of, consequential damages associated with the wrongful towing and storage of his vehicles. Had he done so, we would find the trial court's mitigation analysis persuasive.

■ Because the vehicles were illegally towed and stored, the plaintiff had no express or implied contractual obligation to pay Superior Towing to store his wrongfully towed vehicles — that obligation belonged to the defendants. To rule, as the trial court implicitly did, that the plaintiff should have mitigated the *defendants'* obligation to pay Superior Towing

turns the mitigation doctrine on its head. The defendants cannot use mitigation as a sword to protect themselves from obligations they incurred to Superior Towing through their unlawful conduct. The plaintiff did not seek the storage costs as damages when he initially filed his petition for declaratory judgment. Accordingly, the defendants cannot assert a failure to mitigate against damages the plaintiff did not originally claim and for which he is not legally liable.

That the parties stipulated, at the urging of the court, that the plaintiff would pay the storage costs pending the court's ultimate resolution of liability does not mandate a different result. Having found that the defendants acted illegally in taking the plaintiff's vehicles, the trial court should have ruled that they, not the plaintiff, were responsible for the $4,350 in storage costs. The plaintiff could not be held responsible to mitigate damages he was not legally obligated to pay.

*Affirmed in part; reversed in part; vacated in part; remanded.*

BROCK, C.J., and NADEAU, J., concurred; DALIANIS and DUGGAN, JJ., concurred in part and dissented in part.

DALIANIS and DUGGAN, JJ., concurring in part and dissenting in part. While we agree with the majority opinion in most respects, we respectfully dissent from the majority's conclusion that the plaintiff had no duty to mitigate damages in this case. "As a general rule, plaintiffs may not recover damages for harm that could have been avoided through reasonable efforts or expenditures." *Flanagan v. Prudhomme*, 138 N.H. 561, 575 (1994). "An exception may be allowed when the party causing harm acted intentionally or with reckless disregard for the plaintiff's interests." *Id.* "Even in that circumstance, however, the plaintiff cannot intentionally or heedlessly fail to protect his or her own interests." *Id.*

The majority reasons that the doctrine does not apply to the plaintiff because: (1) he did not seek storage fees as damages; and (2) the defendants, not he, were contractually liable for the fees. We believe that both of these premises are mistaken.

As a factual matter, we believe that the plaintiff sought the storage fees as damages. While he did not claim them in his initial petition for declaratory judgment, temporary and permanent injunction and damages, the record shows that he sought reimbursement of these fees later in the litigation. Although the majority may conclude that the plaintiff sought reimbursement of the fees later in the litigation because the trial court ordered him to pay them, this is pure speculation. Indeed, the plaintiff himself, at trial and on appeal, implicitly conceded that the storage fees were his to mitigate. In both forums, he argued only that requiring him to

mitigate damages by removing his vehicles the day after they were towed was unreasonable.

No matter how it is framed, the issue before us is which party owes money to the towing company, an innocent third party, for storing the plaintiff's vehicles. From the towing company's perspective, it is logical that the plaintiff should pay the charges because the vehicles are his and, presumably, he is the only one who can reclaim them from storage. Thus, the towing and storage costs are technically the plaintiff's damages resulting from the defendants' illegal act, thereby obligating him to mitigate those damages, if possible. While it may seem unfair that the plaintiff should have to do anything as he was the one who suffered the wrong, this is no different from other tort or contract claims to which the mitigation doctrine applies. *See* RESTATEMENT (SECOND) OF TORTS § 918 (1979); *Lane v. Camire*, 126 N.H. 344, 344-45 (1984) (affirming directed verdict for defendant on plaintiff's claim of damages totaling $80,000 from loss of or damage to stored property where plaintiff made no attempt to mitigate damages by retrieving property from storage, four days after its removal).

We believe that the trial court correctly found that the plaintiff failed to mitigate his damages by paying the $300 towing fee to retrieve his vehicles the day after they were towed. We agree with the trial court that requiring the plaintiff to pay the $300 towing fee to secure his vehicles was reasonable. *See Flanagan*, 138 N.H. at 575.

We disagree with the trial court that the plaintiff's failure to pay the $300 towing fee precluded him from recovering any portion of the storage fees, however. The record shows that had the plaintiff paid the $300 towing fee, he would have had to either park his retrieved vehicles in the common area of the complex or find an alternative place to store them. Either option would have required him to incur additional damages. As the evidence demonstrates, had he parked his retrieved vehicles in the common area of the complex, they would likely have been towed again. The notice the plaintiff received on April 5, 2001, from the board indicated that it intended to enforce the overnight parking ordinance "strictly" and would have any vehicle that did not comply with the ordinance towed.

The evidence further shows that had the plaintiff found an alternative place to store his vehicles, he would have had to pay storage costs. For instance, from May to December 2001, the plaintiff paid Rescue Leasing $200 per month to store vehicles to avoid having more than four vehicles in the common area overnight. Therefore, we would hold that the trial court erroneously ruled that the plaintiff was not entitled to recover any portion of the costs for storing his wrongfully towed vehicles, and we would

remand to the trial court to determine the portion of these costs he was entitled to recover.