Strafford
No. 2004-871

BARCLAY SQUARE CONDOMINIUM OWNERS' ASSOCIATION

v.

MARK GRENIER

Argued: February 22, 2006
Opinion Issued: May 18, 2006

*Shaheen & Gordon, P.A.*, of Portsmouth (*Sanford Roberts* on the brief and orally), for the plaintiff.

*Marshall Law Offices*, of East Kingston (*Keri J. Marshall* and *Robert E. Ducharme* on the brief, and *Mr. Ducharme* orally), for the defendant.

DUGGAN, J. This appeal involves further proceedings in the dispute between the plaintiff, Barclay Square Condominium Owners' Association (Association), and one of its members, defendant Mark Grenier. *See Grenier v. Barclay Square Commercial Condo. Owners' Assoc.*, 150 N.H. 111 (2003). Grenier owns two units at the Barclay Square Condominium complex (Barclay Square), which house his automotive repair business. The central issue in the dispute is Grenier's use of the common area to the rear of his units to park vehicles overnight. The Superior Court (*Fauver, J.*) ruled that a regulation adopted by the Association governing overnight parking discriminated against Grenier and awarded him equitable relief. We reverse and remand.

Barclay Square contains twenty-four units and is a registered condominium association governed by a board of directors (the board). Barclay Square consists of two rectangular buildings running parallel to each other and perpendicular to the road. Paved parking areas lie between and in front of the two buildings, and an additional common area (the gravel lot) sits behind them. Barclay Square's property also includes a 300-foot by 100-foot undeveloped area (the rear common area) located behind the gravel lot. Until 2003, Grenier used the portion of the gravel lot that adjoins his units to store vehicles overnight. His automotive repair business requires overnight storage space for approximately twenty to twenty-five vehicles.

The parking arrangements at Barclay Square have a complicated history. Initially, the condominium rules only restricted parking during the winter months. In September 1998, however, the Association adopted a temporary rule restricting overnight parking in the rear of the condominium. In early 1999, Grenier received a reprieve from the temporary rule. In August 1999, the Association's management company notified Grenier that his reprieve would expire on September 30, 1999. That fall, the board adopted a new rule (the 1999 amendment), which required owners to request permission to park in the gravel lot overnight and stipulated that "[u]nder no circumstances shall the board grant an individual business owner permission to park more than four ... vehicles overnight at one time." Grenier refused to comply with the 1999

amendment and, in April 2001, the Association towed his vehicles from the gravel lot.

Shortly thereafter, Grenier sued the Association for the resulting $4,350 in towing and storage charges. *Grenier*, 150 N.H. at 114. The superior court ruled that the board lacked the authority to: (1) amend its rules to limit overnight parking in the gravel lot to four vehicles per business owner; and (2) tow vehicles that were parked in violation of that amendment. *Id.* at 114-15. On appeal, the Association conceded that the board lacked the authority to limit the number of spaces available to each owner, but argued that the language of the 1999 amendment enabled it to tow Grenier's vehicles. *Id.* at 115. We held that, even if the Association did have the authority to enforce the 1999 amendment, the towing penalty violated an express provision in the condominium bylaws prohibiting the board from levying fines in excess of ten dollars. *Id.*

In 2002, while the appeal was pending, the Association enacted a new rule (the 2002 amendment) which allocated two gravel lot parking spaces to each owner and provided owners with the option of renting unassigned spaces for twenty dollars a month. Grenier did not comply with the 2002 amendment because he believed that it discriminated against him.

In response, the Association brought this declaratory judgment action in superior court. The Association also sought to enjoin Grenier from further violation of the condominium rules. Grenier counterclaimed that: (1) the 2002 amendment violated the Barclay Square condominium declaration (declaration) because it discriminated against him; and (2) the Association had engaged in discriminatory enforcement of its rules.

Following a bench trial and a view, the trial court ruled that Grenier could not "sustain a cause of action for discriminatory enforcement of the Barclay Square bylaws," but found that the Association had discriminated against him. Specifically, the trial court found that "the actions of the Association were directed at Grenier, who was using the [gravel lot] for a purpose consistent with and in furtherance of his legitimate business." The trial court also found that the Association failed to show a "reasonable relationship between the monthly charge assessed for renting additional parking spaces in the gravel [lot] and the actual maintenance expenses for that area." Invoking its equity powers, the trial court ordered the Association to permit Grenier to "make reasonable use of the [rear] common area consistent with the purposes for which it is designated, which is parking and snow removal." *See* RSA 498:1 (1997). The trial court limited Grenier's use of the rear common area to overnight storage of "cars awaiting service, cars awaiting parts, repaired cars awaiting pickup by their owners, and the loaner cars for the shop."

On appeal, the Association argues, *inter alia,* that the trial court erred by ruling that the 2002 amendment discriminated against Grenier. Grenier cross-appeals the trial court's refusal to award him attorney's fees.

The Association argues that the 2002 amendment did not discriminate against Grenier because it "applied equally to all owners" and provided each owner with "the opportunity to acquire additional parking for a reasonable fee." The Association further contends that the implication of the trial court's order—that each condominium owner has the right to use a common area according to his individual needs "regardless of the collective will of the other owners"—frustrates the intent of the condominium statute. Grenier responds that the trial court correctly ruled that the 2002 amendment discriminated against him in violation of the declaration because he is the only owner at Barclay Square who is affected by the amendment. Grenier further contends that the evidence presented at trial supports the court's conclusion that his use of the gravel lot "was the driving motivation behind the [2002] amendment."

A condominium's legal documents are "a contract that governs the legal rights between the association and property owners." *Schaefer v. Eastman Community Assoc.,* 150 N.H. 187, 190 (2003) (quotation and brackets omitted). The interpretation of a contract is a question of law, which we review *de novo. Sherman v. Graciano,* 152 N.H. 119, 121 (2005). We are also mindful that a condominium declaration "should not be so narrowly construed so as to eviscerate the association's intended role as the governing body of the community." *Schaefer,* 150 N.H. at 191. "[T]he important role [associations] play in maintaining property values and providing municipal-like services" justifies a broad view of the powers delegated to them. *Id.* Accordingly, a condominium association may promulgate rules to address day-to-day concerns as long as such rules: (1) do not conflict with the express language of the condominium documents; and (2) are reasonable and not arbitrary or capricious. *See id.* at 194; *Grenier,* 150 N.H. at 115.

We turn first to the express language of the condominium documents. The declaration provides in pertinent part: "[N]o amendment shall discriminate against any Unit Owner, or against any Unit or class or group of Units, unless the Unit Owners affected shall consent ...." The declaration does not define the term "discriminate."

While we have not yet interpreted "discriminate" in this context, other courts have done so. In *Graham v. Board of Directors of Riveredge Village Condominium Assoc.,* No. 03A01-9404-CH-00137, 1994 WL 597009 (Tenn. Ct. App. Nov. 2, 1994), the court considered whether a condominium association's board could promulgate regulations that required owners

who rented out their units to pay $100 more per month in common expenses than non-renting owners. *Graham*, 1994 WL 597009, at *1. Holding that the board lacked the authority to promulgate the regulations without first amending the master deed, *id.* at *3, the court observed that even if the board had acted properly, the amendment would have conflicted with the master deed's provision that "no amendment shall discriminate against any unit owner or against any unit or class or group of units." *Id.* at *4. The court commented that the increased common fees required "owners who choose to rent their units [to] bear a disproportionate share of the common expenses," and thus constituted a "direct contravention of the provisions in the governing statute and master deed which expressly prohibit this kind of discrimination." *Id.* at *6.

*Graham* adopted the reasoning of the New Jersey Supreme Court in *Thanasoulis v. Winston Towers 200 Ass'n.*, 542 A.2d 900 (N.J. 1988). *Thansasoulis* involved a condominium regulation that charged non-resident owners higher monthly parking fees than resident owners. *Thanasoulis*, 542 A.2d at 902. The court held that the regulation violated the state condominium statute as well as the condominium's master deed because it "compelled [non-resident owners] to bear a disproportionate share of the common expenses." *Id.* at 906. Specifically, the court found that because the higher fees paid by non-resident owners reduced the common elements fee charged to all owners, the regulation effectively required non-resident owners "to contribute three times more money to the common-expense fund" than resident owners. *Id.* The court concluded that the condominium statute and master deed prohibited the condominium association from discriminating against non-resident owners in this manner. *Id.*

■ Grenier argues that the 2002 amendment similarly discriminates against him. In *Thanasoulis* and *Graham*, the higher fees were discriminatory because they applied only to non-resident owners whose use of the parking facilities was no different than that of the resident owners. *Thanasoulis*, 542 A.2d at 905-06; *Graham*, 2004 WL 597009, at *1, *6. In contrast, the 2002 amendment applies equally to all Barclay Square owners. Moreover, the 2002 amendment provides owners with the option of renting unassigned gravel lot spaces and thus does not limit owners to two spaces per unit. Therefore, the amendment does not discriminate against Grenier on its face.

■ Grenier argues that the 2002 amendment has a disparate impact upon him because he is the only owner at Barclay Square whose business requires overnight parking. While we agree that the 2002 amendment may have more impact upon Grenier than upon other owners at Barclay

Square, this results from Grenier's greater need for overnight parking and not from any impermissible purpose by the Association. *Cf. Washington v. Davis*, 426 U.S. 229, 242 (1976) (disparate impact, without more, does not constitute unfair discrimination).

■ Finally, we are not persuaded that the trial court's finding that Grenier's "use of common area was the driving motivation behind the [2002] amendment" leads to the conclusion that the 2002 amendment discriminated against him. Due to the broad deference that we grant to the collective will of an association, we decline to hold that where a requisite majority of owners amend their rules in response to the activities of one owner, they have necessarily discriminated against that owner. *See* RSA 356-B:35, I (1995) (by-laws provide for the self-government of the condominium by an association of all the unit owners); *cf. United States v. O'Brien*, 391 U.S. 367, 383 (1968) (an otherwise constitutional statute will not be struck down "on the basis of an alleged illicit legislative motive").

We turn next to whether the 2002 amendment was reasonable and not arbitrary or capricious. Although we have expressed the view that an association may not enact rules that are unreasonable, *Schaefer*, 150 N.H. at 190, we have never applied the reasonableness standard. Other jurisdictions that have applied the reasonableness standard in this context require that the regulation "bear a relationship to the health, happiness and enjoyment of life of various [condominium] owners." *Johnson v. Hobson*, 505 A.2d 1313, 1318 (D.C. 1986) (quotation omitted); *see also Unit Owners Ass'n of Buildamerica-1 v. Gillman*, 292 S.E.2d 378, 385 (Va. 1982); *Hidden Harbour Estates, Inc. v. Norman*, 309 So. 2d 180, 181-82 (Fla. Dist. Ct. App. 1975); *Holleman v. Mission Trace Homeowners Ass'n.*, 556 S.W.2d 632, 636 (Tex. Ct. App. 1977).

■ The court in *Johnson* held that a parking rule promulgated "only after [the board] receiv[ed] numerous complaints from unit owners concerning the unavailability of daily parking spaces at the Condominium" bore a "clear relationship to the health, happiness, and enjoyment of life of various [condominium] owners." *Johnson*, 505 A.2d at 1319 (quotation omitted). In reaching its conclusion, the court observed that although "certain unit owners may have objected, it is beyond argument that the Board acted to enhance the quality of life of unit owners." *Id.* In the instant case, the record indicates that the Association enacted the 2002 amendment in response to complaints from unit owners regarding overnight parking at Barclay Square. Although Grenier may object to the terms of the 2002 amendment, it reflects a reasonable effort by the Association to accommodate the concerns of its unit owners and thus sufficiently relates to the health, happiness and enjoyment of the

occupants at Barclay Square. *Cf. id.* Accordingly, we conclude that the 2002 amendment is reasonable and not arbitrary or capricious.

As a fallback position, Grenier contends that the declaration guarantees him the absolute right to use the unassigned gravel lot spaces for business purposes. The declaration states:

> [E]ach Unit Owner shall have the exclusive right and easement to use such designated surface parking space or spaces to be assigned to him by the Association of owners. . . . Any additional spaces, not so assigned *shall be available* for occasional use of Unit Owners, occupants and/or invitees, subject to the By-Laws and rules and regulations of the Condominium.

(Emphasis added.) Grenier relies on the word "shall" to argue that the Association may not deny him use of the unassigned spaces. While we agree that "shall" mandates that unassigned spaces in the gravel lot be available for "occasional use," the declaration conditions this availability on "the By-Laws and rules and regulations of the Condominium." Thus, the declaration does not guarantee Grenier the right to unfettered use of the unassigned gravel lot spaces. Instead, it grants him "occasional use," subject to the Association's bylaws, rules, and regulations.

■ Finally, the trial court found that the Association failed to demonstrate a "reasonable relationship between the monthly charge assessed for renting additional parking spaces in the gravel [lot] and actual maintenance expenses for that area." This finding, however, is not dispositive of our inquiry into whether the 2002 amendment satisfies the reasonableness standard. We need not decide whether the trial court properly allocated the burden of proof to the Association on this issue; because the record shows that the Association's decision to charge owners a monthly fee for use of unassigned spaces in the gravel lot is sufficiently related to the health, happiness and enjoyment of the unit owners at Barclay Square, the Association is not required to show a reasonable relationship between the monthly fee and the cost of maintaining the gravel lot.

In light of our holding that the trial court erred by determining that the 2002 amendment discriminated against Grenier, we need not address the parties' other arguments on appeal.

*Reversed and remanded.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.