Original
No. LD-91-008

ROBERTSON'S CASE

April 23, 1993

*Backus, Meyer & Solomon*, of Manchester (*Robert A. Backus* on the brief and orally), for the committee on professional conduct.

*Gallagher, Callahan & Gartrell P.A.*, of Concord (*Michael R. Callahan* and *David A. Garfunkel* on the brief, and *Mr. Callahan* orally), for the respondent, Bernard J. Robertson.

BROCK, C.J.  On October 1, 1991, the Supreme Court Committee on Professional Conduct (committee) filed a petition for public censure and sanctions against Attorney Bernard J. Robertson. *See* SUP. CT. R. 37(13). We referred the petition and answer to a Referee (*Dunn*, J.). Following two and a half days of evidentiary hearings, the referee found that Robertson had violated Rules of Professional

Conduct (Rules) 4.4 and 8.4, but dismissed the petition insofar as it charged a violation of Rule 3.1. Neither Robertson nor the committee accepted the referee's decision, and the matter is now before this court on appeal. We affirm.

The underlying charge of professional misconduct stems from allegations by Robertson that the City of Portsmouth and its attorneys withheld five documents during litigation brought by Robertson on behalf of Dale Daigle. Daigle alleged in part that he had been beaten by police officers from the City of Portsmouth (city). The city was represented by Attorneys Paul Cox, Stephen Gaige, and Robert Sullivan. The litigation resulted in two jury trials and, to date, three reported decisions by this court. *See Daigle v. City of Portsmouth*, 129 N.H. 561, 534 A.2d 689 (1987) (*Daigle I*); *Daigle v. City of Portsmouth*, 131 N.H. 319, 553 A.2d 291 (1988) (*Daigle II*); *Daigle v. City of Portsmouth*, 133 N.H. 498, 577 A.2d 1236 (1990) (*Daigle III*).

Daigle initially sued the city in 1983. During the course of discovery, Robertson inadvertently discovered the "Hersey note," which constitutes one of five documents allegedly improperly withheld by the defense attorneys. The trial court overruled the attorneys' assertion of work product privilege and ordered that the note be produced. That note, dated July 8, 1983, indicates that Portsmouth Police Officer Hersey overheard Officer Pace say he did a "whoopie" on Daigle. The trial against the city proceeded to verdict in December 1984. The jury awarded the plaintiff $500,000, finding that Daigle's assailant had been Officer Pace, and finding the city liable as his employer on the theory of respondeat superior. The jury found that although there was a cover-up at a higher level in the police department, Pace did not act in accordance with custom, policy or practice sanctioned by the city.

Daigle sued Officer Pace in 1984. During the course of discovery, Robertson obtained, pursuant to court order, the remainder of the documents allegedly improperly withheld: the so-called "Moore," "Sargent," and "Lightizer" statements. These statements, which were reduced to writing between July 2, 1984, and October 5, 1984, indicate that other Portsmouth police officers overheard Officer Pace state that he had "done a job on" Daigle, and that it was common knowledge that Pace used excessive force in many of his arrests. The trial against Pace concluded in December 1985, and the jury found for the defendant. This court reviewed and affirmed the verdicts in both cases on August 6, 1987. *See Daigle I*, 129 N.H. 561, 534 A.2d 689.

On October 2, 1987, Robertson filed a "consolidated sanction motion" that alleged "willful and systematic withholding of discover-

able material" and sought sanctions against the city and its counsel. The Superior Court (*Nadeau*, J.) denied the motion on December 22, 1987, and Robertson appealed to this court. On February 22, 1988, Robertson filed a professional misconduct complaint against the three defense attorneys based on the alleged discovery abuses. Attorneys Cox, Gaige, and Sullivan answered the complaint on March 1, 1988, and the committee thereafter treated the answer as a cross-complaint of professional misconduct against Robertson.

On December 29, 1988, this court vacated the denial of the consolidated sanction motion and remanded the case for an evidentiary hearing. *See Daigle II*, 131 N.H. at 329, 553 A.2d at 297. After a six-day hearing, Judge Bean, acting as Master, denied the motion for sanctions, concluding that "neither the City of Portsmouth nor its attorneys engaged in any willful, intentional or malicious withholding of documents or information." That decision, which was approved by the Superior Court (*McHugh*, J.), was affirmed by this court on August 3, 1990. *See Daigle III*, 133 N.H. at 501, 577 A.2d at 1238.

On July 18 and 19, 1991, the committee conducted a hearing, which focused primarily on the cross-complaint against Robertson. The committee dismissed the charges against the three defense attorneys based on the facts found by Judge Bean in the sanctions hearing, but found Robertson guilty of violating Rules 3.1, 4.4, and 8.4. Following a hearing on May 12–14, 1992, the referee upheld the violation of Rules 4.4 and 8.4, but dismissed the violation of Rule 3.1. We first address the committee's contention that the referee erred in dismissing its charge that Robertson violated Rule 3.1.

Rule 3.1 states: "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law." The referee stated that he was not persuaded by "'clear and convincing evidence' that [Robertson] . . . frivolously and in bad faith pursued actions against attorneys after Judge Nadeau's original denial." He further stated that "it becomes increasingly clear that whatever Mr. Robertson did with regard to his claim for sanctions until the vacation of that ruling by the Supreme Court cannot be deemed frivolous and in bad faith." In addition, the referee granted Robertson's proposed finding of fact that "[o]n October 2, 1987, Attorney Robertson, based upon the facts then known to him, had an objectively and subjectively reasonable, good faith basis to believe that discovery misconduct had occurred in [*Daigle I*] and that both the City and its counsel were aware of, and involved in, that misconduct."

■■ "In reviewing the referee's findings our only function is to determine whether a reasonable person could have reached the same decision as the referee on the basis of the evidence before him." *Bourdon's Case*, 132 N.H. 365, 370, 565 A.2d 1052, 1055 (1989) (quotation omitted). "It is not our role to substitute our own findings for the judgment of the referee." *Wehringer's Case*, 130 N.H. 707, 716, 547 A.2d 252, 257 (1988). Because the record before us supports the referee's findings, we affirm his decision to dismiss allegations of misconduct under Rule 3.1.

Robertson testified to the factors that caused him to believe that the defense attorneys knew of the five documents. Pivotal to his belief was the December 1985 testimony of Deputy Mortimer that Attorneys Gaige, Sullivan, and Cox knew of the contents and the existence of the Hersey note as early as August 5, 1983. Subsequent to this testimony, Robertson obtained discovery orders to review the files of the city and its counsel in these cases.

In those files he discovered a letter dated August 19, 1983, from Cox to the city's insurance carrier indicating that a number of police officers had stated that there "was a hard core nucleus of older police officers on the Portsmouth force . . . [who] are known to take matters into their own hands by roughing up the criminals." He also discovered another letter dated March 14, 1984, from Cox and Gaige to the city's insurance carrier in which they reported that there were rumors circulating that Officer Pace or the Portsmouth Police Department may have been involved in the Daigle incident, that Pace was at the Portsmouth police station when the call came in the night of the incident, and that other Portsmouth police officers recalled Pace bragging about "taking care of" an individual.

Robertson discovered a letter from Officer Pace's counsel to Gaige dated November 7, 1984, requesting a copy of the Lightizer statement, which, Robertson testified, suggested to him that Gaige knew of the document's existence four months before it was produced. In addition, Robertson reviewed a memorandum written on June 11, 1984, by Sullivan indicating that in preparation for Portsmouth Police Captain Moore's deposition, Moore informed Sullivan that on at least one occasion Officer Pace responded to a call even though he was off duty at the time, and that Moore thought the call was on the evening Daigle was allegedly beaten. Robertson testified, however, that in Moore's deposition he responded "no" when asked whether anything unusual took place on the night of the Daigle incident, and indicated that he had no information that would assist in the case.

Robertson testified that based upon this and other evidence, he concluded that the attorneys were guilty of withholding discoverable

evidence and that the withheld information could have affected the outcome of the first Daigle trial, particularly on the issue of custom, policy or practice. Based upon this record, we agree with the referee that the committee failed to prove by clear and convincing evidence that Robertson frivolously and in bad faith pursued sanctions against the defense attorneys after Judge Nadeau's original denial. We note that Judge Nadeau did not hold an evidentiary hearing before he denied the sanctions motion, and that it was not until Judge Bean's hearing on remand from *Daigle II* that the defense attorneys testified to the timing of their knowledge of documents and information.

■■ The committee argues that Judge Bean's decision on the sanction motion collaterally estopped Robertson from contesting allegations of misconduct against him. The issue before Judge Bean was whether the defense attorneys had engaged in knowing and willful violations of the discovery rules. The focus of the sanctions hearing, therefore, was what and when the defense attorneys knew of the allegedly withheld documents. Conversely, the issue before the referee was whether Robertson acted frivolously and in bad faith in pursuing sanctions. The focus of the censure hearing, therefore, was what Robertson knew or reasonably believed about alleged discovery misconduct. That the defense attorneys had been absolved of charges of misconduct was not conclusive on the issues before the referee, and did not retroactively affect the state of Robertson's knowledge or beliefs. A fundamental requirement for the application of collateral estoppel is that the issue subject to estoppel be identical in each action. *See Metropolitan Property & Liability Ins. Co. v. Martin*, 132 N.H. 593, 595, 574 A.2d 931, 932 (1989). Because that requirement was not here met, we reject the committee's argument.

Next, we address Robertson's contention that the referee erred in finding by clear and convincing evidence that he violated Rule 4.4. Rule 4.4 provides: "In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such person."

The referee stated that "[t]here is uncontradicted evidence that [Robertson] accused the lawyers representing the City of Portsmouth with serious crimes (25 felonies), violations of multiple court orders, and usurping the power and defying the authority of the Superior Court." In addition, the referee stated that "[f]urther instances of attempts on the part of [Robertson] to settle his case with the City were decidedly intimidating." The referee concluded that

Robertson had "exceeded the parameters of zealous advocacy" and "engaged in an undertaking with the substantial purpose to embarrass and burden the attorneys for the City of Portsmouth."

Robertson does not dispute that he went to Sullivan's office on September 30, 1987, and told him that the city should settle the original suit for a figure that was twice the amount of the jury verdict, and that in the same meeting he informed Sullivan that he was going to pursue charges of professional misconduct. Nor does Robertson deny that he told Sullivan that Cox was guilty of misconduct and was "psychotic," or that he repeatedly alleged the commission of felonies and crimes by the defense attorneys. Robertson suggests, however, that his statements to Sullivan were merely meant as an attempt to "set forth the strengths of his case in a way which [would] elicit favorable responses from the other [lawyers]" and he argues that simply because he used an "aggressive tone" does not establish that his remarks were inappropriate.

We agree with the referee that Robertson violated Rule 4.4. His behavior under the circumstances described could have had no substantial purpose other than to embarrass and burden. Although Robertson argues that his testimony presents a different picture of his actions than that testified to by the city's attorneys, it was for the referee as fact-finder to assess the credibility of the witnesses and resolve conflicts in testimony. *See Otis' Case*, 135 N.H. 612, 618, 609 A.2d 1199, 1203 (1992); *Wehringer's Case*, 130 N.H. at 716–17, 547 A.2d at 257. Accordingly, we affirm the referee's conclusion that Robertson's actions violated Rule 4.4. The violation of Rule 4.4 automatically violates Rule 8.4(a) (professional misconduct for a lawyer to violate the Rules of Professional Conduct).

The referee acknowledged that the provisions of Rules 3.1 and 4.4 frequently interlock but that he "attempted to sort those tactics 'undertaken to embarrass and burden' from the violation of the provisions 'frivolously and in bad faith pursuing sanctions.'" We agree that this analysis was appropriately undertaken here. The language of Rule 3.1 focuses on the merit of the underlying claim, while Rule 4.4 concerns the attorney's means in representing a client. As set forth at length above, facts established that the sanctions claim was not frivolous, although ultimately unsuccessful. Tactics undertaken by Robertson in pursuing a resolution of the litigation were, however, beyond the bounds of acceptable professional conduct.

We affirm the dismissal of the committee's petition insofar as it charged a violation of Rule 3.1, and sustain the petition insofar as it charged a violation of Rules 4.4 and 8.4. Bernard J. Robertson is

hereby publicly censured and assessed costs incurred by the committee and bar counsel in investigating and prosecuting this matter, in an amount to be determined by this court. *See* SUP. CT. R. 37(16).

*So ordered.*

All concurred.