510 P.3d 1089
The PEOPLE of the State of Colorado, Petitioner,
v.R. Alex RAINES, #36610, Respondent.
Case Number: 20PDJ025
Office of Presiding Disciplinary Judge of the Supreme Court of Colorado.
April 27, 2022 ORDER REVOKING PROBATION UNDER C.R.C.P. 251.7(e)
WILLIAM R. LUCERO, PRESIDING DISCIPLINARY JUDGE
In May 2020, R. Alex Raines ("Respondent") stipulated to a six-month suspension, all to be stayed on his successful completion of a two-year period of probation, which carried certain conditions, including that he violate no further Rules of Professional Conduct. Because he has since engaged in further misconduct, his probation must be revoked and his six-month suspension activated.
I. PROCEDURAL HISTORY On May 11, 2020, the Presiding Disciplinary Judge ("the Court") approved a "Stipulation, Agreement and Affidavit Containing the Respondent's Conditional Admission of Misconduct," suspending Respondent from the practice of law for six months, all to be stayed on his successful completion of a two-year period of probation. In the stipulation, Respondent agreed that he had not acted with reasonable diligence in representing a client in civil litigation and that he later failed to notify a presiding tribunal that his client had passed away. Respondent agreed that he had violated Colo. RPC 1.3 and Colo. RPC 8.4(d).
Respondent's probation took effect on June 15, 2020. As part of his probation, he was required to successfully complete ethics school; perform a law office audit with a qualified and experienced lawyer; complete the Colorado Lawyer Self-Assessment and review the assessment with the same lawyer who conducted the audit; pay costs; and commit no further rule violations.
On March 11, 2022, Justin P. Moore and Erin R. Kristofco, of the Office of Attorney Regulation Counsel ("the People"), filed a "Motion for Order to Show Cause Pursuant to C.R.C.P. 251.7(e)," alleging that Respondent violated the terms of his probation by engaging in further misconduct that ran afoul of the Rules of Professional Conduct. The Court issued a show cause order on March 22, 2022. Respondent never responded to the show cause order.
II. FINDINGS OF FACT Because neither party requested a hearing under C.R.C.P. 251.7(e), the Court relies on the People's motion to show cause to find the following facts.
From January 2021 to the end of January 2022, Respondent was the Assistant District Attorney ("ADA") for the 12th Judicial District, which encompasses Alamosa, Conejos, Costilla, Mineral, Rio Grande, and Saguache counties. Respondent served under Alonzo Payne, the elected District Attorney for the 12th Judicial District. The People allege that as ADA, Respondent misused his power by engaging in threatening behavior that served no substantial purpose other than to burden, delay, or embarrass others. They also maintain that he abused his power and engaged in a pattern of behavior that prejudiced the proceedings and the administration of justice.
12th Judicial District Probation Department
On March 19, 2021, Respondent appeared in court at a hearing, via WebEx, to address a criminal defendant's violation of probation. Respondent represented the prosecution. Respondent and the public defender stated that they had agreed to revoke the defendant's probation and then reinstate it. The only condition of the reinstated probation was a 65-day jail sentence; under the terms of the agreement, however, the defendant would receive credit for 65 days served, and the case would be closed.
After the parties advised the court of the agreement, the judge commented on the record that the resolution was "interesting." The judge asked for the probation officer's input. Kenna Gonzales, the probation officer, had screened the defendant for community corrections, to which he was accepted. The defendant had a pending charge for possession of a controlled substance in Conejos County. Gonzales relayed to the court her concerns about the proposed resolution. After Gonzales spoke for a short period of time, Respondent objected (over WebEx) and stated that the probation officer's role was not to object or to make recommendations that differ from the agreement between the prosecutor and the defense.
The judge informed Respondent that probation's role was to provide its perspective, and he invited Gonzales to continue. Respondent interrupted the probation officer again. The judge threatened to mute Respondent due to his continued interruptions while Gonzales made her recommendations.
After Gonzales made her record, Respondent stated that he would withdraw the complaint and decline to prosecute the probation revocation. Respondent maintains that although he did not withdraw that particular complaint, he had the discretion as a prosecutor to do so.
The judge said he was not inclined to accept the stipulation and asked Respondent to state his position again. Respondent stated he would like to proceed and asked the court to accept the stipulation. After the judge declined to do so, the matter was continued until April 2021.
Respondent's Telephone Call of March 23, 2021
After the March 19 hearing, 12th Judicial District Chief Probation Officer Bill Gurule attempted to follow up with Respondent about his behavior and statements at the hearing. The People maintain that Gurule informed Respondent that he had no interest in challenging negotiations between prosecutors and defense counsel but that probation officers, as officers of the court, must answer questions posed by the court.
According to the People, Gurule believed this angered Respondent. Respondent said, "show me any case law that says you have any say in these matters then I'll listen to you ... cite case law to me, Bill." Gurule recalled that Respondent continued to escalate his tone and stated, "you and your POs are not attorneys; you do not have law degrees, you did not attend law school and you do not have any say in these matters. You are not a party to this case." Finally, Gurule reported that Respondent stated, "you guys aren't even state employees ... you do not work for the state. You do not represent the People of the State ... that is my job; you guys just work for judicial but are not state employees."
Gurule tried to deescalate and asked Respondent to calm down. But Respondent replied, "maybe my office should open an investigation on you, Bill." Respondent told the People's investigators that he recalls making a statement to the effect of, "I would hate to have to go back to my office and open an investigation."
This statement left Gurule "speechless." He interpreted it as a threat. Gonzales, who was also in the room and heard the conversation between Gurule and Respondent, recalls the conversation transpired in a manner similar to Gurule's account. Gonzales also felt that Respondent's statement about "opening an investigation" was a threat; she believed he was using his power to supersede what the probation officers had to say.
According to Gonzales, Respondent's behavior affected collaboration between the offices, making her job and the processing of challenging cases even more difficult. Gonzales also perceived that Respondent's interference created an "extra barrier" in already difficult cases and that Respondent's behavior negatively affected the work environment.
Alamosa Police Department
In September 2021, Ken Anderson, the Alamosa Chief of Police, met with Respondent, District Attorney Payne, and two captains from the Alamosa Police Department. The meeting was called to discuss preparing officers for trial testimony. But Respondent and Chief Anderson began talking about press releases the police department issued about arrests related to drug trafficking.
Anderson reported that Respondent referenced these press releases in an angry way, suggesting he construed the releases as putting pressure on the district attorney's office to prosecute more drug crimes. Anderson also reported that during the discussion of the press releases, Respondent stated that if Anderson came after Respondent's boss, Respondent would come after Anderson.
Saguache County District Court case number 21CR40
Defense lawyer Raymond Miller represents Juan Carlos Espinosa in Saguache County District Court case number 21CR40. Miller negotiated with the assigned prosecutor, Ricardo Rivera, who offered Espinosa the opportunity to plead guilty to a class-four drug felony ("DF4"). The plea offer was a two-year deferred sentence, with probation as a condition. In exchange, the defendant waived his right to a preliminary hearing on September 15, 2021. The matter was then bound over to district court.
On November 16, 2021, the matter came before the court for a hearing. Miller appeared on behalf of Espinosa, and Respondent appeared for the prosecution. Respondent made the following record:
So Your Honor, in reviewing the file this morning and looking at the notes, as sparse as they are, it comes to my attention that I think that Mr. Miller's intent today is to plead his client guilty to a Class 4 drug felony. Frankly, I don't know how that offer was ever conveyed. I have no intention of assigning [sic] any plea paperwork that would effectuate that. I don't know if that was something that we need to litigate, because I don't know if—there's not a written preliminary hearing waiver. So I guess we may be in the position of needing to set a preliminary hearing. Because a DF4 off a DF1 with the allegations, with the waits [sic] involved here is inappropriate. And I apologize that somehow that happened.1 Miller asked for a continuance because he had not been able to discuss the matter further with his client. The court agreed to continue the matter. In doing so, the judge said:
Obviously if Mr. Miller has a valid contact [sic] agreement in place and can show that he relied to his client's detriment on that offer, then obviously I would be disagreeing with Mr. Raines's ... point. However, if it was just ‘I don't (indiscernible). I don't know’, then that is a different situation. So -- but I don't know because they don't – there's no minute orders for County Court. So -- so you know, and you all handle that as you need to.2 The court continued the matter to December 16, 2021. Respondent and Miller did not speak about the case between November 16 and December 16, 2021. But Miller met with District Attorney Payne on November 29, 2021, and informed Payne about the case's posture. Payne signed the petition for entry of the same plea agreement that Rivera had offered in September 2021.
On December 16, 2021, Miller and his client reviewed and signed the petition. When Miller presented the petition to the court, Respondent responded angrily. The transcript of the hearing on December 16, 2021, captured this colloquy:
RESPONDENT: I think that Mr. Miller's ignoring the fact that he's going to have other clients that he needs offers from, and he's not behaving in a way that's very conducive to -- to getting things done. And I'm going to be factoring in his behavior here in every subsequent case.
COURT: All right. Well, let's not make statements like that. Because you certainly cannot hold who a person's attorney is against that person in making offers. That is highly, highly unethical. And I know, Mr. Raines, that you would not do that in real life. So I understand you are frustrated and I get that and I accept that, but let's not write checks that we can't cash, right? Well, here's the deal –
RESPONDENT: Well, what I'm saying is, Your Honor, Mr. Miller's burned all -- all trust that he has with the Assistant District Attorney. And that's whether or not an attorney has trust with the person they're trying to negotiate is certainly something that factors into every plea bargain.3 According to the People, Respondent's comments caused Miller to worry that he would not be able to resolve cases favorably in the future and that Respondent would make Miller's clients suffer.
Rio Grande County case number 21M123
David Jones's firm, Decker & Jones, represented Derrick Tate in Rio Grande County case number 21M123. Tate was charged with unlawful possession of a controlled substance and violation of a protection order, both class-one misdemeanors. Tate was arrested and released with a summons to appear in court.
On November 9, 2021, Jones's firm entered an appearance and moved to continue the hearing set for November 18, 2021, because counsel (Jones's partner Christopher Decker) was out of the state on that date. The motion represented that Tate would appear in court.
On November 17, 2021, Jones's office manager, Marilyn Underwood, followed up with the court clerk because the court had not yet ruled on the motion to continue. According to Underwood, the court clerk informed her that the judge was going to grant the continuance but was leaving and did not have her calendar to set a new date. According to Underwood, the clerk informed her that neither counsel nor Tate needed to appear.4 Underwood then contacted Tate to inform him that he did not need to attend. Tate and his counsel did not appear in court during the morning docket on November 18. At the end of the morning docket that day, Respondent learned about the conversation between Jones's staff and the court staff. Respondent then called Jones's office and asked to speak with Decker. Christine Pocrnick, Jones's receptionist, reports that Respondent was rude, so she transferred the call to Underwood, who attempted to explain why Jones and his client were not in court that morning.
According to Underwood, Respondent hardly allowed her to speak. He yelled and accused her of improper behavior and communicating ex parte with the court. Jones called Respondent that same day, November 18, to address the situation. Jones reported that Respondent continued his pattern of behavior, including by speaking over Jones and accusing him of ex parte communications with the court. Jones also remembered that Respondent said to him, "don't worry, I'm not going to grieve you."
At around 1:30 p.m. the same day, the court recalled the case, and Jones appeared with Underwood via WebEx. At the hearing, Jones informed the court that due to some miscommunication, his office had told the defendant, Tate, that the office would get a new court date.
Even though Tate's attorney had filed a motion to continue; Respondent was aware of the conversation and a likely miscommunication between the court staff and Jones's staff; the court had acknowledged there had been a miscommunication; and Jones's staff had told Tate he did not need to appear, Respondent nevertheless requested a warrant for Tate's arrest:
RESPONDENT: I have an -- I have another suggestion if that doesn't work. Which is the Court finds that Mr. Tate failed to appear this morning, vacates the trial, vacates the other hearing dates, and issues a warrant. That – that would give Defense Counsel adequate time to file their motions, and treat Mr. Tate like other individuals who didn't appear in court when they were instructed to.
THE COURT: I'm not – I'm not going to do that. It's clear to me there was some miscommunication. And as I previously indicated, I'm not assigning any blame regarding the miscommunication. It happened. It's a fact. Mr. Tate's on the phone now, and I don't think there's any need to issue a warrant. So I'm not --5 Based on these events, Jones felt it necessary to ask the court to appoint a special prosecutor. In his pleading, Jones expressed concern that because Respondent accused him and his firm of unethical behavior, Respondent would not be fair to Tate. Citing C.R.S. § 20-1-107,6 Jones maintained that "[f]or a prosecutor to come so unhinged over these facts, it must be presumed he has a personal or financial interest in the case. Likewise, the amount of anger and unprofessionalism directed toward counsel and his staff by this prosecutor are special circumstances that would render it unlikely that Mr. Tate would receive a fair trial."
Jones asserted that Respondent's "volatile and outrageous conduct with counsel and his staff establish ‘special circumstances’ warranting his removal because his egregious behavior was proceeded by his unjustified and meritless request to have a warrant issued for Mr. Tate's arrest even after being apprised that counsel's office told him not to appear based on communications with the Court."
Jones later agreed to table his motion, which eventually was rendered moot because the district attorney's office assigned a new prosecutor to the case.
III. LEGAL STANDARDS AND ANALYSIS C.R.C.P. 251.7(e) permits the People, should they receive information indicating that a lawyer may have violated probationary conditions, to move for an order requiring the lawyer to show cause why her or his stayed suspension should not be activated. If either party so requests, the Court must hold a hearing on the motion.7 In a probation revocation proceeding, the People bear the burden of establishing probationary violations by a preponderance of the evidence.8 The People allege that Respondent violated his probationary conditions by engaging in professional misconduct. They contend Respondent's conduct in the matters described above contravened Colo. RPC 8.4(d), which forbids a lawyer from engaging in conduct that prejudices the administration of justice, as well as Colo. RPC 4.4(a), which prohibits a lawyer, while representing a client, from using means that have no substantial purpose other than to embarrass, delay, or burden a third person.
Because Respondent failed to answer the Court's show cause order, the People's request could be deemed confessed or admitted.9 Even so, the Court examines each incident the People describe, and it finds their request to revoke Respondent's probation is sound on the merits.
Probation Department Interactions Under the preponderance of the evidence standard, the Court concludes that Respondent violated Colo. RPC 8.4(d) during the hearing of March 19, 2021. He interrupted the proceeding, attempting to arrogate to himself the power to control the information before the judge; indeed, his captious approach threatened to deprive the court of Gonzales's perspective.10 Moreover, by petulantly warning that he might decline to prosecute the probation revocation matter—simply because Gonzales had provided her opinion at the court's request—he risked jeopardizing public safety.
Respondent's comments to Gurule on March 23, 2021, violated Colo. RPC 4.4(a).11 During that conversation, which Gurule initiated in the wake of the March 19 hearing, Respondent darkly intimated that he could open a criminal investigation against Gurule. The Court sees no purpose in this self-aggrandizing statement other than to bully and burden Gurule. The Court also credits Gonzales's concern that this intimidation tactic undermined collaboration between the prosecutorial and probation offices and made her job more difficult.
Alamosa Police Department Respondent's remarks to Anderson were inappropriate and unprofessional. Nevertheless, as the People have reported the event, Respondent's comments do not appear to relate to a particular judicial proceeding. The Court thus does not find that Respondent's conduct during this incident violated Colo. RPC 8.4(d).12 Nor did Respondent issue his veiled threat in the course of representing a client in a particular matter, placing his conduct outside the scope of Colo. RPC 4.4.13 Further, the Court cannot find that Respondent had no substantial purpose for uttering those comments other than to harass Anderson; he may have intended his remarks, however ill-delivered, as criticizing—and thus attempting to change—the law enforcement department's public communications policies and practices. For these reasons, the Court cannot find by a preponderance of the evidence that Respondent violated Colo. RPC 4.4(a) in his discussion with Anderson.
Saguache County District Court case number 21CR40 Respondent's handling of the Espinosa plea violated both Colo. RPC 8.4(d) and Colo. RPC 4.4(a). In November 2021, Respondent attempted to sabotage a petition to enter a plea agreement, which his colleague had already approved. When Respondent objected to the substance of the plea, Miller, the defense lawyer, felt compelled to request a continuance, thereby delaying the case's disposition.
A month later, when Miller presented the same plea, which Respondent's supervisor, the elected district attorney, personally approved, Respondent again objected. He then implied that he would penalize Miller's other clients based on Miller's conduct in the case. These remarks were so inappropriate that the presiding judge admonished Respondent, characterizing them as "highly, highly unethical." In leveling these threats, Respondent had no substantial purpose other than to harass Miller and perhaps to attempt to improperly coerce him into withdrawing the petition. Indeed, based on Respondent's statements, Miller feared that Respondent, an officer of the court, would refuse to behave fairly with him and his other clients in the future. This behavior imperiled the administration of justice and burdened Miller.14 Rio Grande County case number 21M123 Respondent violated Colo. RPC 4.4(a) and Colo. RPC 8.4(d) in the Tate case. When Tate and his counsel failed to appear at the hearing, Respondent hectored both Underwood and Jones. Though they attempted to interject and explain what had occurred, Respondent yelled at them and accused them of improper or unethical behavior, though he mentioned that he would not file a grievance against Jones. These diatribes served no substantial purpose other than to berate Underwood and Jones.15 Later that day, the court recalled the case. During the hearing, Respondent requested that the court issue a warrant for Tate's arrest. He did so even though he knew Tate had been told not to attend the hearing. Respondent's "volatile and outrageous" conduct so disquieted Jones that he asked the court to appoint a special prosecutor, reasoning that Tate could not receive a fair trial with Respondent helming the prosecution. Only after the district attorney assigned the case to a new prosecutor was the motion rendered moot. The Court finds that Respondent's behavior in this matter prejudiced the administration of justice; it necessitated Jones's motion, as it raised the question of whether Respondent might punish Tate for Underwood's miscommunication with court staff.16 IV. CONCLUSION AND ORDER Respondent engaged in a splenetic pattern of posturing, threats, and personal attacks while serving as a prosecutor, abusing the power of his office. Because this behavior prejudiced the administration of justice and intimidated third parties, violating Colo. RPC 4.4(a) and Colo. RPC 8.4(d), he breached the probationary condition requiring him to refrain from committing further rule violations. His probation should thus be revoked.
Accordingly, the Court REVOKES Respondent's probation, LIFTS the stay on Respondent's six-month suspension, and SUSPENDS Respondent from the practice of law for SIX MONTHS , EFFECTIVE Wednesday, May 11, 2022. On that date, the Court will issue an "Order and Notice of Suspension." Within fourteen days thereafter, Respondent SHALL comply with C.R.C.P. 251.28(d), requiring a lawyer to file an affidavit with the Court setting forth pending matters and attesting, inter alia , to notification of clients and of other jurisdictions where the lawyer is licensed. Should Respondent wish to resume the practice of law, he will be required to submit to the People, within twenty-eight days before the end of his suspension, an affidavit complying with C.R.C.P. 251.29(b).
1 Ex. 1 at 3:11-23.
2 Ex. 1 at 5:6-15.
3 Ex. 2 at 8:10-9:2.
4 Some discrepancy exists about what the clerk told Underwood. The court informed Jones that its staff denied telling Underwood that Tate did not need to appear. But the court also recognized that there had been "miscommunication ... on both ends." See Ex. 3 at 10:2-11:23.
5 Ex. 3 at 15:6-18.
6 C.R.S. § 20-1-107 governs motions to disqualify prosecutors and appointment of special prosecutors. Subsection 2 of that provision states, in pertinent part, "The motion shall not be granted ... unless the court finds that the district attorney has a personal or financial interest or special circumstances exist that would render it unlikely that the defendant would receive a fair trial."
7 C.R.C.P. 251.7(e).
8 Id.
9 See C.R.C.P. 121 § 1-15(3) (the "failure of a responding party to file a responsive brief may be considered a confession of the motion"); C.R.C.P. 55(a) (providing for entry of default when a properly served party fails to respond to a motion seeking affirmative relief); In re Bass , 2013 CO 40 ¶¶ 3, 14, 307 P.3d 1052 (affirming a lawyer's probation revocation, which itself was premised on a default finding when the lawyer failed to respond to a show cause order).
10 See In re Small, 296 Kan. 759, 294 P.3d 1165, 1185, 1191 (2013) (concluding a lawyer's use of threats and intimidation tactics towards opposing counsel, a judge, and disciplinary authorities violated Rule 8.4(d) ); In re Williams , 414 N.W.2d 394, 397 (Minn. 1987) (finding that a lawyer prejudiced the administration of justice when he "engaged in calculated trial tactics to provoke and bait opposing counsel, intimidate and demean witnesses, and obfuscate the record," thereby corrupting the trial process).
11 See In re Holste , 302 Kan. 880, 358 P.3d 850, 854 (2015) (finding that a county attorney violated Rule 4.4 by naming a person as a defendant in a suit when doing so had no substantial purpose other than to embarrass or burden that individual); Robertson's Case , 137 N.H. 113, 626 A.2d 397, 400-01 (1993) (noting that a lawyer's threatening tactics when seeking to resolve litigation were beyond the bounds of acceptable conduct and violated Rule 4.4(a) ).
12 See ABA Annotated Model Rules of Professional Conduct Rule 8.4 ann. at 691 (8th ed. 2015) (noting that Model Rule 8.4(d) is usually applied to conduct connected with a proceeding of a tribunal).
13 See ABA Annotated Model Rules Rule 4.4 ann. at 471 ("Rule 4.4, like Rules 4.1, 4.2, and 4.3, is explicitly directed at a lawyer's conduct in representing a client.").
14 See Colo. RPC 8.4 cmt. 5 ("Lawyers holding public office assume legal responsibilities going beyond those of other citizens. A lawyer's abuse of public office can suggest an inability to fulfill the professional role of lawyers."); Colo. RPC 3.8 cmt. 1 ("A prosecutor has the responsibility of a minister of justice and not simply that of an advocate," which includes "specific obligations" to see that a defendant is "accorded procedural justice."); see also In re Alexander, 232 Ariz. 1, 300 P.3d 536, 547 (2013) (finding that a prosecutor prejudiced the administration of justice by filing lawsuits against certain judges, thereby sending a message to all judges that they risked having to defend against civil damages lawsuits if they made rulings that displeased the county attorney's office).
15 See In re Torgerson , 870 N.W.2d 602, 610 (Minn. 2015) (affirming a finding that a lawyer's abuse of court staff by yelling and screaming at them to move a hearing date violated Rule 4.4(a) ).
16 Cf. In re Aubuchon , 233 Ariz. 62, 309 P.3d 886, 898 (2013) (finding that a lawyer prejudiced the administration of justice by violating "the public trust placed in prosecutors to wield their considerable power fairly and for the public good").