NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Professional Conduct Committee
Case No. LD-2024-0005
Citation: Appeal of Hoppock, 2025 N.H. 18


APPEAL OF JOSEPH S. HOPPOCK, ESQUIRE

Argued: November 13, 2024
Opinion Issued: April 24, 2025

Elizabeth M. Murphy, assistant disciplinary counsel, of Concord, on the brief and orally, for the Attorney Discipline Office.


Preti Flaherty Beliveau & Pachios, PLLP, of Concord (William C. Saturley and Kat Mail on the brief, and Kat Mail orally), for the respondent.


COUNTWAY, J.

[¶1] The respondent, Joseph S. Hoppock, appeals orders of the Supreme Court Professional Conduct Committee (PCC) ruling that: (1) Hoppock violated Rule 4.4(a) of the New Hampshire Rules of Professional Conduct; and (2) the appropriate sanction is "a six-month suspension from the practice of law, two months of which are imposed and four months of which are stayed . . . for two years on [specified] conditions." We affirm.

[¶2] The following facts were found by the hearing panel, see Sup. Ct. R. 37(4)(c), and upheld by the PCC, or relate the contents of documents in the record before us. Hoppock represented a party with whom the complainant

was involved in a dispute over the registration of a trade name. In June 2019, the complainant filed a grievance with the Attorney Discipline Office (ADO) regarding a letter, dated May 20, 2019, that she received from Hoppock. The ADO subsequently docketed the grievance as a complaint.

[¶3] The letter stated that the complainant had defamed Hoppock's client on social media and warned, "As you will soon find out, legal consequences shall befall you because of your reckless defamatory conduct." The letter continued, in pertinent part, to state:

> [L]et me be very clear. I will not get into it with you and your ill, immature feelings toward [Hoppock's client] . . . which have now landed you in a difficult legal position.

> What I will do is sue you for negligently or intentionally (or very recklessly) publishing falsely defamatory statements concerning [the client] to third parties . . . .

> . . . .

> . . . These are actionable statements for which [the client] demands Two Hundred Fifty Thousand ($250,000.00) Dollars in order to settle this problem, <u>which I remind you is totally of your own making</u>.

> . . . .

> I will file the Complaint with the Court by June 1st if [the client] has not received your check, in good funds, by that date. Let me be very clear about one more point: You should be very concerned you will have "a lot to lose" by saying the things you have said about [the client]; we will pursue you until you have nothing left, except assets exempt from judicial execution.

> . . . .

> In the event you decline [the client's] generous settlement proposal, you are advised and warned not to destroy or alter, in any manner, any evidence that may be subject to or pertinent to any related claims of [the client]. . . .

> I strongly encourage you to pass this letter on to your insurance agent and attorney, without delay.

(Citation omitted.)

[¶4] The complainant received a second letter, dated June 6, 2019, along with a draft release and settlement agreement. The second letter essentially informed the complainant that if she did not settle, she would have to pay "enormous legal fees." (Quotation omitted.)

[¶5] Following the ADO's issuance of the notice of charges, the hearing panel was tasked with determining whether Hoppock's letters violated Rule of Professional Conduct 4.4(a), which provides: "In representing a client, a lawyer shall not take any action if the lawyer knows or it is obvious that the action has the primary purpose to embarrass, delay or burden a third person." N.H. R. Prof. Conduct 4.4(a). The panel concluded that "the language and style contained in" the May 20 letter "was obnoxious and rude and should not be encouraged," but that the ADO had not proved a violation of Rule 4.4(a).[1]

[¶6] On March 17, 2022, the PCC issued a notice of oral argument regarding the hearing panel report. The PCC subsequently rejected Hoppock's contention that the PCC lacked authority to request the parties to appear for oral argument when neither party requested it and stipulations had not been filed. The PCC then reiterated its request for the parties' appearance at oral argument and stated that it "would like to hear from [Hoppock] and the ADO on" six specified questions.

[¶7] Following oral argument, the PCC issued an order finding that the hearing panel "erred in finding no professional misconduct with regard to Rule 4.4(a) of the New Hampshire Rules of Professional Conduct in this matter." Focusing on the rule's use of the disjunctive "or," the PCC concluded that it prohibits two distinct types of action that have the consequence of burdening a third person: (1) "any action if the lawyer knows . . . that the action has the primary purpose to . . . burden a third person"; and (2) "any action . . . if it is obvious that the action has the primary purpose to . . . burden a third person." (Emphases added and quotations omitted.) The PCC interpreted the first type, in which the lawyer "knows" the action's primary purpose, "as addressing the lawyer's subjective mental state," and the second, "obvious" type, as involving an objective standard.

[¶8] The PCC determined that the hearing panel did not appear to have considered or made factual findings related to the objective, "obvious" inquiry. It concluded, however, that a remand to the hearing panel for further factfinding was unnecessary and that it could determine whether Hoppock violated the rule based on "the uncontested contents and context of the May 20, 2019, letter." The PCC concluded that "it was objectively obvious that the primary purpose of Attorney Hoppock's May 20, 2019, letter to [the complainant], an unrepresented party, threatening financial ruin, was to

---

[1] The parties agree that the ADO did not request the PCC's review of the hearing panel's decision.

3

burden [the complainant] through intimidation." Accordingly, the PCC remanded the matter to a new hearing panel for a hearing on sanction only.

[¶9] The second hearing panel determined the appropriate sanction was a six-month suspension stayed, on certain conditions, for two years. Both parties requested the PCC's review of that decision. The PCC determined that the appropriate sanction was a six-month suspension from the practice of law, with two months imposed and four months stayed, on specified conditions, for two years. This appeal followed.

[¶10] This case comes before us not on a petition for sanctions filed by the PCC, but as an appeal from a finding of a violation and imposition of sanctions by the PCC. In a case with the same procedural posture, we assumed, without deciding, that our usual standard of review for PCC petitions applied when the parties did not argue for a different standard. See Bruzga's Case, 162 N.H. 52, 57 (2011). Because the parties do not argue otherwise in this case, we will do the same. "In attorney discipline matters, we defer to the PCC's factual findings if supported by the record, but retain ultimate authority to determine whether, on the facts found, a violation of the rules governing attorney conduct has occurred and, if so, the sanction." Id. "The PCC's findings of violations of the Rules must be supported by clear and convincing evidence." Id.

I. The PCC's Authority to Order Oral Argument

[¶11] Hoppock first argues that the PCC exceeded its authority when it ordered oral argument in this matter. He contends that Supreme Court Rule 37A(III)(d)(2)(A) does not "empower the PCC to direct parties to appear for oral argument on matters unrelated to stipulations, where neither party has requested oral argument." Rule 37A(III)(d)(2)(A) provides:

> Whether memoranda are filed or not, either disciplinary counsel or respondent may . . . [within 15 days of the date of the hearing panel report] request oral argument before the [PCC] to address any issues in the hearing panel reports, stipulations or record agreed to by the parties. The [PCC] may, in its discretion, direct the parties to appear before it to address any issues raised in dispositive or partial stipulations, as set forth in Rule 37A(III)(aa)(C).

Sup. Ct. R. 37A(III)(d)(2)(A).

[¶12] We disagree that the PCC's authority to order oral argument is limited by Rule 37A(III)(d)(2)(A). That provision is found in the section of Rule 37A governing formal proceedings. See Sup. Ct. R. 37A(III). The preface to that section states that "[a]s good cause appears and as justice may require, the

4

[PCC] may waive the application of any rule under this section." Id. Thus, the preface confirms the interpretation evinced by the substance of the rules themselves: the provisions in Rule 37A(III) — including Rule 37A(III)(d)(2)(A) — are merely procedural and do not establish or delimit the PCC's jurisdiction or authority. Cf. Appeal of Carreau, 157 N.H. 122, 123 (2008) (distinguishing between procedural requirements, which the court has discretion to waive, and "[s]tatutory . . . requirements relative to the vesting of jurisdiction," for which the court lacks authority to create an exception (quotation omitted)). Instead, the PCC's authority is conferred in Rule 37(3)(c), which provides, in relevant part:

> The [PCC] shall have the power and duty:
>
> . . . .
>
> (3) To consider hearing panel reports and written memoranda of disciplinary counsel and respondents. To conduct oral arguments in which disciplinary counsel and each respondent are given ten (10) minutes to address the findings and rulings contained in the hearing panel reports. After consideration of oral arguments, hearing panel reports, transcripts of hearings before hearing panels and memoranda, to determine whether there is clear and convincing evidence of violations of the rules of professional conduct. To remand complaints to hearing panels for further evidentiary proceedings. To dismiss grievances or complaints, administer a reprimand, public censure or a suspension not to exceed six (6) months.

Sup. Ct. R. 37(3)(c). We conclude that the power conferred in Rule 37(3)(c) includes the power to direct the parties to appear for oral argument whenever the PCC determines oral argument will assist it "to determine whether there is clear and convincing evidence of violations of the rules of professional conduct." Id. Moreover, we conclude that the PCC's authority to conduct oral argument includes the authority to direct questions to the parties. Thus, to the extent Hoppock challenges that the PCC specified questions to be addressed at oral argument, he has failed to persuade us that the PCC exceeded its authority.

II. Finding of Violation

[¶13] Hoppock next argues that the PCC erred in applying Rule 4.4(a)'s objective, "obvious" standard. We first determine what the standard means. The ethics committee comment to New Hampshire's Rule of Professional Conduct 4.4(a) notes that it "substantially differs from the [American Bar Association] model rule by using the word 'obvious' to set a higher objective standard." N.H. R. Prof. Conduct 4.4, Ethics Committee Comment.

5

Construing the objective standard as a reasonable person standard, we conclude that a lawyer violates Rule 4.4(a) under this variant if it would be obvious to a reasonable person that the lawyer's action had "the primary purpose to embarrass, delay or burden a third person." N.H. R. Prof. Conduct 4.4(a).

[¶14] Relying on principles of contract interpretation, Hoppock argues that the operative question is "how to objectively assess [his] intent" when he wrote the letter. He therefore contends that the "PCC needed to consider the intent of the Letter from the perspective of a reasonable person 'in . . . [his] position.'" Rule 4.4(a), however, does not contain the language "obvious to a person in the position of the lawyer," and "[w]e will not add words to the plain language of a rule," State v. Paul, 176 N.H. 262, 265 (2023).

[¶15] Hoppock next argues that the PCC's finding of a Rule 4.4(a) violation under the objectively obvious standard is contrary to factual findings made by the hearing panel. We disagree. The PCC correctly concluded that a determination of objective obviousness in this case required only the application of that standard "to the uncontested contents and context of the May 20, 2019, letter." With respect to context, an important fact was, as the PCC repeatedly noted, that the complainant was an unrepresented party. We agree with the PCC's conclusion that "[d]rafted as it was to an unrepresented party, it is objectively obvious that the primary purpose of Attorney Hoppock's May 20, 2019 letter was to burden [the complainant] within the meaning of Rule 4.4(a)." Or, stated differently, it would be obvious to a reasonable person that the primary purpose of the letter was to burden the complainant through intimidation. Because we agree with the PCC that a violation of Rule 4.4(a) could be found on application of the objective standard to "the uncontested contents and context" of the letter, we necessarily also reject Hoppock's argument that the PCC erred in failing to remand to the hearing panel for further factfinding.

III. Sanction

[¶16] Hoppock next argues that even if we affirm the finding that he violated Rule 4.4(a), we should vacate the PCC's sanction order. Following our practice for determining an appropriate sanction, the PCC looked to the ABA Standards for Imposing Lawyer Sanctions (Standards) for guidance. See Mesmer's Case, 173 N.H. 96, 108 (2020) (noting that "[a]lthough we have not adopted the [Standards], we look to them for guidance"). In accordance with the Standards and our precedent, the PCC first determined the appropriate "baseline" sanction by considering: "(1) the ethical duties violated by the lawyer, (2) the lawyer's mental state at the time of the violations, and (3) the extent of the actual or potential injury caused." Id. at 108-09.

6

[¶17] The PCC determined, under the second <u>Standards</u> factor, that Hoppock's mental state was "knowingly," and accordingly found that the appropriate baseline sanction was suspension.  <u>See</u> ABA <u>Standards for Imposing Lawyer Sanctions</u> § 6.22 (2005).  Hoppock argues that this determination contradicts the hearing panel's finding — which the PCC did not reverse — "that the ADO failed to prove [he] acted knowingly when authoring the Letter."  He contends that his conduct should instead be characterized as negligent, leading to a baseline sanction of either reprimand or admonition.  <u>See id</u>. §§ 6.23, 6.24.

[¶18] For purposes of this opinion, we will assume, without deciding, that Hoppock is correct in characterizing his conduct as negligent.  Nevertheless, in light of the aggravating factors found by the PCC — most significantly, Hoppock's "stipulation to a similar violation of the same rule less than two years prior to him composing the letter to [the complainant]," for which violation, the record reflects, he received a reprimand — we conclude that the suspension imposed by the PCC is the appropriate sanction.  <u>See id</u>. § 8.2 (stating that "[s]uspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession"); <u>see also</u> <u>Bruzga's Case</u>, 162 N.H. at 57 (noting this court's ultimate authority to determine the sanction for lawyer misconduct).  The hearing panel made a specific finding, with which the PCC agreed, that "Hoppock's conduct caused actual and potential injury to the complainant, the legal system, and the reputation and standing of the profession."  Although Hoppock disagrees with this finding, he has failed to persuade us that it is unsupported by the record.  <u>See</u> <u>Bruzga's Case</u>, 162 N.H. at 57.

[¶19] Hoppock next argues that the PCC erred in ignoring two mitigating factors that the hearing panel found persuasive, and that both the PCC and the hearing panel ignored two other mitigating factors.  The hearing panel found significant "the burden imposed on Hoppock by the length of the disciplinary process."  The PCC, however, found the delay in processing this case neither aggravating nor mitigating.  Although Hoppock argues that "[d]elay should be rejected as a mitigating factor only when" it is the lawyer's fault, the case he cites in support — <u>Douglas' Case</u>, 156 N.H. 613 (2007) — does not so hold. The PCC found the delay in this case attributable to relatively neutral causes — "scheduling preferences, seeking appellate review, and the preference for an in-person hearing during the Covid pandemic."  "Under these circumstances, we decline to find that the delay in disciplinary proceedings presents a mitigating factor."  <u>Id</u>. at 622.

[¶20] The hearing panel also noted that it was "cognizant of the impact on Hoppock's livelihood a suspension would carry and wishes to avoid that impact if possible."  Hoppock argues that the PCC ignored this "key mitigating

7

factor[] considered important by the [h]earing [p]anel." The hearing panel, however, did not identify its concern as a mitigating factor and the ADO correctly points out that the impact of a suspension is not listed in the Standards as a mitigating factor that courts have recognized. See Standards, supra § 9.32 & cmt. We conclude that the PCC did not err in failing to consider the financial impact of a suspension as a mitigating factor.

[¶21] Hoppock further argues that two other mitigating factors should have been considered: "absence of a dishonest or selfish motive and character or reputation." Having reviewed the record, we conclude that the evidence presented did not compel a determination that Hoppock did not act selfishly or that his character and reputation constituted a mitigating factor in this matter. In particular, we are not persuaded by Hoppock's argument that "it is difficult to conceive of how writing the Letter could have been motivated by selfishness." In its report at the violation stage of the proceedings, the hearing panel noted that Hoppock testified "that many of his clients want to hire him because he is aggressive and knows the law. His aggressive style usually doesn't stop until the case ends." Writing the letter at issue maintained the "aggressive style" for which some clients choose to hire him. Thus, it is not difficult to conceive how he might have benefitted from that action.

[¶22] Finally, Hoppock argues that the sanction imposed on him "is out of proportion with the alleged misconduct—and with sanctions imposed in comparable cases." We disagree. "In deciding the appropriate sanction," each case is considered "on its own facts and circumstances." Douglas' Case, 156 N.H. at 621 (quotation omitted). The PCC considered, as comparable cases, Kalil's Case, 146 N.H. 466 (2001), and Robertson's Case, 137 N.H. 113 (1993). In comparing those cases to this matter, the PCC found it significant that "Hoppock violated Rule 4.4(a) with a single, considered communication to an unrepresented party, with less aggressive language than in Kalil but after having recently admitted violating the same Rule." We conclude that the PCC carefully considered and distinguished the comparable cases, and we find no error in its analysis.

[¶23] "We retain the ultimate authority to determine the sanction for a violation of the rules governing attorney conduct." Bruzga's Case, 162 N.H. at 60. "In determining the proper sanction, we remain mindful that the purpose of attorney discipline is not to inflict punishment, but rather to protect the public, maintain public confidence in the bar, preserve the integrity of the legal profession, and prevent similar conduct in the future." Mesmer's Case, 173 N.H. at 108 (quotation omitted). Because the sanction imposed by the PCC serves these purposes, we affirm it in all respects. We emphasize that this sanction is not intended to chill zealous advocacy; rather, it addresses conduct that exceeded the bounds of zealous advocacy and entered the territory of attorney misconduct. See Robertson's Case, 137 N.H. at 118 (sanction warranted where "[t]actics undertaken by [the attorney] in pursuing a

8

resolution of the litigation were . . . beyond the bounds of acceptable professional conduct").

[¶24] For the foregoing reasons, we affirm the finding that Hoppock violated Rule 4.4(a) and the sanction imposed.  Because we have neither referred to, nor relied upon, those portions of Hoppock's brief and appendix that the ADO has moved to strike, the ADO's motion to strike is moot.

Affirmed.

MACDONALD, C.J., and BASSETT and DONOVAN, JJ., concurred.